1  Matthew L. Dameron (*pro hac vice*
   *forthcoming*)
2  Missouri Bar No. 52093
   WILLIAMS DIRKS DAMERON LLC
3  1100 Main Street, Suite 2600
   Kansas City, Missouri 64105
4  Telephone: (816) 945-7110
   Facsimile: (816) 945-7118
5  matt@williamsdirks.com

6  Deborah Rosenthal Cal. Bar No. 184241
   SIMMONS HANLY CONROY LLC
7  455 Market Street, Suite 2220
   San Francisco, California 94105
8  Telephone: (415) 536-3986
   Facsimile: (415) 537-4120
9  drosenthal@simmonsfirm.com

10  *Additional Counsel on Signature Page*

11
12              **UNITED STATES DISTRICT COURT**
        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

13  CHERYL FERNANDEZ, individually)
    and on behalf of all others      )   Case No. **'17 CV 1628 GPC WVG**
14  similarly situated,              )
                                     )
15          Plaintiffs,              )   **CLASS ACTION COMPLAINT**
                                     )
16      v.                           )
                                     )   **JURY TRIAL DEMANDED**
17                                   )
    ATKINS NUTRITIONALS, INC.,       )
18  and                              )
    DOES 1-10;                       )
19                                   )
                                     )
20          Defendants.              )
    _____   )
21
22          Plaintiff Cheryl Fernandez, individually and on behalf of all other similarly

23  situated individuals, by and through her counsel, brings this Complaint against

24
                                    1
                        CLASS ACTION COMPLAINT

Defendants Atkins Nutritionals, Inc., and Doe Defendants 1-10, for damages arising out of the purchase of a product from Defendants that purported to have a "Net Carbs" representation that did not include sugar alcohols in its calculation of "Net Carbs." In support of her Complaint, Plaintiff respectfully submits and alleges the following:

## **NATURE OF THE CASE**

1.      This case concerns the labeling used by Atkins Nutritionals, Inc. when it touts its products as having low "net carbs" even though the products contain sugar alcohols.

2.      When it calculates "net carbs" for labeling purposes, Atkins subtracts carbohydrates associated with sugar alcohols from its calculation, even though sugar alcohols contribute to a product's carbohydrates and impact blood sugar. Atkins itself has characterized the term "net carbs" as "imprecise."

3.      Simply put, the calculation that Atkins employs is wrong, meaning that the labeling and representations regarding net carbs also are wrong. Atkins conceals these facts from consumers in violation of California law.

4.      Plaintiff thus brings this suit on her own behalf, and on behalf of other affected purchasers in California, to obtain all remuneration available under the law.

## **PARTIES**

5.      Plaintiff Cheryl Fernandez is a resident of San Diego County, California.

CLASS ACTION COMPLAINT

6.      Defendant Atkins is a Colorado corporation with headquarters located at 1050 17th Street, Ste. 1000, Denver, Colorado 80265-1001.

7.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Doe Defendants 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues these Defendants by such fictitious names. When Plaintiff ascertains the true names and capacities of these Defendants, Plaintiff will seek leave to amend this complaint accordingly. Plaintiff is informed and believes and thereon alleges that each defendant designated herein as a Doe is: (a) either a resident of California or does business in California of such nature and/or quantity as to render such defendant subject to jurisdiction in California in this case, and (b) responsible, in some actionable manner, for the events and happenings hereinafter referred to, and has proximately caused injuries and damages to Plaintiff, as hereinafter alleged.

## JURISDICTION AND VENUE

8.      The United States District Court for the Southern District of California has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class are citizens of California, and Defendant Atkins is a citizen of Colorado.

9.      This Court has jurisdiction over Atkins because Atkins is registered to conduct business in California, has sufficient minimum contacts with California, and intentionally avails and has availed itself of California's marketplace through

CLASS ACTION COMPLAINT

the promotion, sale, marketing, and distribution of its products in California, such that the exercise of jurisdiction by this Court is both proper and necessary.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

11.     Defendant Atkins has concealed material facts from consumers in that it has failed to disclose that its "net carb" calculation is misleading because sugar alcohols have a carbohydrate impact that should be included in any carbohydrate calculation.

12.     Furthermore, Atkins made false, misleading statements to deceive consumers into purchasing its products under the belief that they are extremely low in carbohydrates, when, in fact, they are not.

13.     Defendant Atkins's fraudulent market scheme includes touting a low "net carb" total for many products, but the phrase "net carb" is highly deceiving, and, as calculated on Atkins's product labels, fraudulent. This is particularly true where Atkins conceals the true nature of sugar alcohols, and conceals the fact that it subtracts sugar alcohols from its total carbohydrate calculation to reach its "net carbs" calculation.

14.     Defendant Atkins is the company which was formed by the late Dr. Robert Atkins (hereinafter "Dr. Atkins") to promote the sale of books and food items related to the "Atkins Diet," a low to no carbohydrate diet.

15.    To follow the Atkins Diet, users must forsake carbs which are present in most processed foods in the average American's diet. In 1999, at the time the Atkins Diet was gaining sweeping popularity, the late Dr. Atkins informed adherents that the most popular artificial sweeteners that American manufacturers use to replace conventional sugars were not approved for use in the Atkins Diet. Dr. Atkins wrote, "Sweeteners such as sorbitol, mannitol, and other hexitols [i.e., sugar alcohols] are not allowed." *See* Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (Rev.) at p. 100 (1999).

16.    In 2002, Dr. Atkins revised this prohibition. He stated, "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable." Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 112 (2002).

17.    What changed? Between 1999 and 2002, Atkins had established a growing line of food products that included sugar alcohols.

### Atkins's Specific Claims on "Net Carbs"

18.    Atkins's website at www.atkins.com explains its definition of "net carbs" as "the total carbohydrate content of the food minus the fiber content and sugar alcohols." It further claims, "The Net Carbs number reflects the grams of carbohydrate the significantly impact your blood sugar level and therefore are the only carbs you need to count when you do Atkins."

19.    Atkins claims its "Net Carb" calculation is based on "science."

20.    Atkins further claims:

CLASS ACTION COMPLAINT

> Net Carbs are the carbohydrates that significantly impact the blood-sugar level; they're the only carbs that count when following Atkins. The good news is that the grams of carbohydrate in fiber, glycerine, and sugar alcohols don't break down and convert to blood sugar and need not be counted by people on the ANA. … So Net Carbs represent the number of grams of total carbohydrate minus those that do not impact blood sugar.[1]

21.    Atkins manufactures, distributes, markets, advertises, and sells products containing sugar alcohols as replacements for ordinary carbohydrates.

22.    Maltitol is the sugar alcohol of Atkins' choice. For example, it is a leading ingredient in the following Atkins' products: (a) Blueberry Greek Yogurt Bar; (b) Chocolate Peanut Butter Pretzel Bar; (c) Strawberry Almond Bar; (d) Cinnamon Bun Bar; (e) Chocolate Chip Granola Bar; (f) Chocolate Peanut Butter Bar; (g) Cookies n' Crème Bar; (h) Mudslide Bar; (i) Chocolate Chip Cookie Dough Bar; (j) Triple Chocolate Bar; (k) Caramel Chocolate Peanut Nougat Bar; (l) Caramel Double Chocolate Crunch Bar; (m) Cashew Trail Mix Bar; (n) Coconut Almond Delight Bar; (o) Dark Chocolate Almond Coconut Crunch Bar; (p) Caramel Chocolate Nut Roll; (q) Dark Chocolate Decadence Bar; (r) Chocolate Chip Crisp Bar; (s) Chocolate Hazelnut Bar; (t) Chocolate Oatmeal Fiber Bar; (u) Cranberry Almond Bar; (v) Chocolate Covered Almonds; (w) Chocolate Candies; (x) Chocolate Peanut Candies; (y) Caramel Nut Chew Bar; (z) Chocolate Caramel

---

[1]    *See* http://www.atkins.com/Science/Articles---Library/Carbohydrates/The-Blood-Sugar-Roller-Coaster--Excess-Carbs,-Exce.aspx

CLASS ACTION COMPLAINT

Mousse Bar; (aa) Chocolate Coconut Bar; (bb) Nutty Fudge Brownie; (cc) Peanut Butter Cups; and (dd) Peanut Caramel Cluster Bar.

23.     The Atkins "net carb" formula subtracts all grams of sugar alcohol from carbohydrates. For example, its "Chocolate Candies" product claims to have just "1g Net Carb."



///

///

///

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

24.     The ingredients panel for Atkins' Chocolate Candies reveals the following:

**Nutrition Facts**
Serving Size 1 pack (28g)

**Amount Per Serving**

| Calories 110 | Fat Cal. 60 |
| --- | --- |

| | % Daily Value* |
| --- | --- |
| Total Fat 7g | 11% |
| Saturated Fat 4.5g | 23% |
| Trans Fat 0g | |
| Cholesterol <5mg | 1% |
| Sodium 5mg | 0% |
| Potassium 60mg | 2% |
| Total Carbohydrate 19g | 6% |
| Dietary Fiber 4g | 16% |
| Sugars 1g | |
| Sugar Alcohols 14g | |
| Protein 1g | 1% |

| Vitamin A  0% | • | Vitamin C  0% |
| --- | --- | --- |
| Calcium  2% | • | Iron  2% |

Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
| --- | --- | --- | --- |
| Total Fat | Less than | 65g | 80g |
| Saturated Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |
| Protein | | 50g | 65g |

★ Sugar Alcohols total includes 0g of glycerin.

INGREDIENTS: CHOCOLATE COATING [MALTITOL, COCOA BUTTER, INULIN, UNSWEETENED CHOCOLATE, WHOLE MILK POWDER, MILK FAT, COCOA POWDER (PROCESSED WITH ALKALI), SOY LECITHIN, VANILLA, NATURAL FLAVORS, SUCRALOSE], MALTITOL, LESS THAN 1% OF PURE VANILLA EXTRACT, CONFECTIONER'S GLAZE, CARNAUBA WAX, BEESWAX, TITANIUM DIOXIDE COLOR, YELLOW 5 LAKE, RED 40 LAKE, BLUE 1 LAKE, BLUE 2 LAKE, YELLOW 6 LAKE, YELLOW 6, GUM ARABIC.   FR01
CONTAINS MILK AND SOY.
THIS PRODUCT IS MANUFACTURED IN A FACILITY THAT USES PEANUTS, OTHER TREE NUTS AND WHEAT.

25.     Thus, Atkins's starts with 19g of total carbs then subtracts 4g of Dietary Fiber and 14g of Sugar Alcohols to arrive at a Net Carbs claim of just 1 gram. The ingredient list reveals "maltitol" is the largest content of the product.

26.     By this calculation, Atkins assigns a carbohydrate value of zero to maltitol and any other sugar alcohols for this product.

27.     But this method of calculation conflicts with the method espoused by Dr. Atkins in his books. Indeed, Dr. Atkins stated that to arrive at net carbs, an individual should subtract only carbohydrates associated with fiber. He stated: "Basically, you can deduct the grams of fiber from the food's total carb count. I

8

CLASS ACTION COMPLAINT

call the net number of grams, 'The carbs that count when you do Atkins.'" Robert C. Atkins, M.D., *Dr. Atkins' New Diet Revolution* (3rd ed.) at p. 68 (2002). He further elaborated, "And determining which carbs count is simple: Check the total fiber grams listed on the food label and subtract that number from the total grams of carbohydrate listed." *Id.* at p. 69. Thus, even Dr. Atkins uses a different carbohydrate calculation than that used by Atkins in its labeling.

28.    Atkins does not disclose the conflict between Dr. Atkins's espoused method of calculating "net carbs" and the method used by the company.

### Sugar Alcohols Retain Significant Energy Value

29.    Contrary to Atkins's claims, the authoritative scientific research on sugar alcohols, particularly maltitol, shows that they continue to have a significant impact on blood sugar levels.

30.    The Diabetes Teaching Center at the University of California, San Francisco puts it best, "[D]on't be fooled – sugar alcohols are still a form of carbohydrate, and they still affect your blood sugar levels, if not as dramatically."[2]

31.    Similarly, Dr. Regina Castro of the Mayo Clinic warns consumers should "be cautious with sugar alcohols" because they "can increase your blood sugar level."[3]

---

[2]    See http://dtc.ucsf.edu/living-with-diabetes/diet-and-nutrition/understanding-carbohydrates/counting-carbohydrates/learning-to-read-labels/counting-sugar-alcohols/.

[3]    See http://www.mayoclinic.org/diseases-conditions/diabetes/expert-answers/artificial-sweeteners/faq-20058038.

CLASS ACTION COMPLAINT

32.    To Plaintiffs' knowledge, no independent scientist, doctor, or researcher agrees with Atkins's assertion that maltitol and other sugar alcohols have a net energy value of zero. Atkins conceals this fact from consumers, and does not disclose this fact in its labeling or representations to consumers.

33.    In the study "Sugar Alcohols and Diabetes: A Review,"[4] Dr. Thomas Wolever explained:

> Some people may believe that products sweetened with sugar alcohols allow for more variety in food choices, and, hence, increased quality of life for people with diabetes. However, there is *no evidence* that sugar alcohol-sweetened products have any benefit on long-term glycemic control in people with diabetes.
>
> …
>
> The rationale behind the use of sugar-alcohol sweetened products for weight management is that they reduce both the energy and sugar contents of confectionary. However, the reduction in energy content is not large[.] … Most sugar alcohols have an energy content 1.0 to 2.0 kcal/g less than sucrose or other carbohydrates, and since tolerance for sugar alcohol intake is limited, their impact on overall energy balance is likely to be, at most, approximately 20 to 40 kcal/day.

Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362.

34.    Ordinary carbs have an energy value of approximately four calories per gram.

---

[4]     See http://archive.diabetes.ca/files/SugarAlcohols--Wolever--CJDDecember2002.pdf.

CLASS ACTION COMPLAINT

35.    Maltitol has an energy value of approximately three calories per gram, 25 percent less than the energy value of an ordinary carb.[5]

36.    Dr. Wolever found that 50 to 75 percent of maltitol is absorbed into the body.

37.    By multiplying the energy value by the percent of the sugar alcohol absorbed by the body, one can arrive at the carb value of a sugar alcohol relative to an ordinary carbohydrate. Thus, total carbohydrate energy consumed per gram of maltitol is actually between 38 to 56 percent of the carbohydrate value of table sugar or ordinary carbohydrates.

38.    Thus, according to this scientifically-accurate calculation, the true "net carbs" in Atkins's "Chocolate Candies" product would be between 6.32 and 8.84 grams instead of the 1 gram fraudulently claimed by Atkins. Accordingly, just as one example, the "Chocolate Candies" product has a "net carb" value of between 632 to 884 percent times as high as that claimed by Atkins.

39.    According to the Diabetes Teaching Center at the University of California, San Francisco, "When counting carbohydrates for products made with sugar alcohols, [one should] subtract half of the grams of sugar alcohol listed on the food label from the total grams of carbohydrate."[6]

---

[5]    See http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/elements-within-the-nutrition-facts-table/eng/1389206763218/1389206811747?chap=1.
[6]    *See* http://www.diabetes.org/food-and-fitness/food/what-can-i-eat/understanding-carbohydrates/sugar-alcohols.html.

CLASS ACTION COMPLAINT

40.    Thus, experts agree: carbohydrates derived from sugar alcohols (1) impact blood sugar, and (2) should be included in any net carbohydrate count for products.

41.    Atkins conceals the fact that sugar alcohols impact blood sugar from consumers.

42.    Atkins conceals the fact that sugar alcohols should be included in the net carb count for products.

## The Term "Net Carbs" is Misleading

43.    The FDA has not regulated the phrase "net carb" but has affirmatively stated that it "ha[s] concerns that [the] term may be misleading to consumers."[7]

44.    The FDA admonished a different company for failing to include maltitol in its carbohydrate count on its label. In a June 20, 2001, letter concerning the product Carbolite, the FDA stated:

> The product is further misbranded because the label bears the claim "Zero Carbohydrate" and the statement "Maltitol . . . . has been omitted from the total carbohydrate content . . . ." Maltitol is a carbohydrate and must be included in the value declared for "Total Carbohydrate" . . .

*See* Food and Drug Administration Warning Letter ONPLDS 20-01 (June 20, 2001).

---

[7]    *See* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2014/ucm407036.htm.

45.    Though the FDA does not formally regulate use of the phrase "net carb," its Canadian counterpart has found that the phrase is "not acceptable due to lack of scientific consensus on … definition and [its] potential to mislead consumers."[8]

46.    In another study, Dr. Wolever articulated the same concerns. He wrote, "Food labels of products containing sugar alcohols can be confusing." Thomas Wolever, M.D. Ph.D., "Sugar Alcohol and Diabetes: A Review," Canadian Journal of Diabetes 2002; 26(4): 356-362 at 360 (2002). He elaborated that "individuals who use product labels to count carbohydrates could potentially overestimate the amount of insulin to use for a carbohydrate load. Complicating this issue is a lack of consistent labelling, both nationally and internationally, for products containing sugar alcohols." *Id.* at 361.

47.    In 2004, Dr. Wolever told the New York Times, "It's a big misconception to say maltitol does not raise blood sugar." Instead, he explained, "Sugar alcohols have come on the market quite aggressively and it's very confusing. The science is not good."[9]

48.    In 2004, Atkins appeared to agree with the consensus that food labels concerning sugar alcohols were misleading. The company announced in 2004 that it would discontinue using the term "net carbs" on its food labels because the term

---

[8]     *See* http://www.inspection.gc.ca/food/labelling/food-labelling-for-industry/nutrition-labelling/carbohydrate-claims/eng/1409844949900/1409845010355.

[9] *See* Burros, Marian, "New 'Low-Carb' Foods Aren't All-You-Can-Eat, N.Y. Times, Apr. 14, 2004, available at http://www.nytimes.com/learning/students/pop/20040415snapthursday.html

CLASS ACTION COMPLAINT

is "imprecise." Sarah Ellison, *Atkins Labels Will Drop Term 'Net Carbs'*, THE WALL STREET JOURNAL, Oct. 6, 2004 (available at http://www.wsj.com/articles/SB109700319191636814). According to the article:

> As low-carb products have proliferated, the food industry has faced increasing skepticism about their nutrient content and labeling. For example, many companies, including Atkins at one time, calculate a products "net carbs" by subtracting grams of fiber and sugar alcohols from the total carbohydrate grams. That calculation allows food makers to cook up starchy, sweet products like brownies, pastries and candy, and call them "low carb." **But one thing the calculation doesn't take into account is that sugar alcohols raise blood-sugar levels, just as "net carbs" do.**

> *Id.* (emphasis added).

49.    Nonetheless, despite acknowledging that the term "net carbs" is "imprecise" – particularly when it subtracts sugar alcohols from its consideration – Atkins continues to use the term in its labeling and continues to use the formulation that it publicly rejected in 2004.

### Atkins Conceals Material Facts and Its Representations Are False

50.    Atkins' "net carb" claims are false, misleading, and likely to deceive consumers, such as Plaintiff and members of the Class, in that Atkins's products have multiple times the level of carbohydrates as labeled by Atkins's net carb claim because sugar alcohol continues to have an effect on blood sugar and calories in direct contradiction to Atkins' claims.

51.    Over the course of the last several years and up until just a few months ago, Plaintiff has purchased at the Wal-Mart and/or Target stores near her home the following Atkins products that have a "net carbs" designation but still

CLASS ACTION COMPLAINT

include sugar alcohols: Chocolate Coconut Bar; Peanut Butter Cups; Dark Chocolate Almond Coconut Crunch Bar; Chocolate Peanut Candies; Caramel Double Chocolate Crunch Bar; and Dark Chocolate Decadence Bar. All of these products contain sugar alcohols (including maltitol), and the net carbs on each product wrongfully omit sugar alcohols from their calculation.

52. Plaintiff believed the false representations about "net carbs" that she saw on the product packaging, and she relied on those representations in deciding to purchase Defendants' products. Plaintiff would not have purchased the products if she had known that the Atkins products identified herein instead had "net carbs" which were up to eight times higher than the amount claimed by Atkins.

53. Furthermore, ordinary and reasonable consumers would not purchase Atkins products containing the "net carbs" designation if they knew the facts and information that Atkins concealed from consumers.

54. Plaintiff and members of the Class have been economically damaged by their purchase of Atkins's products, in that they spent money on products that they would not have purchased if they had known of the true facts and information that Atkins concealed and misled consumers about. Additionally, Plaintiff and members of the Class have been physically affected by Defendants' concealments and misrepresentations because they have consumed significantly more carbohydrates than they would have if they had not been misled by Defendants, and these carbohydrates affect blood sugar levels and cause weight gain in an amount greater than the "net carb" amount claimed by Atkins. In this respect, Plaintiff and members of the Class have overpaid for Atkins products containing the "net carbs" calculation that omits sugar alcohols from its calculation.

CLASS ACTION COMPLAINT

55.     At a minimum, Plaintiff contends that Defendant should cease labeling its products with a "net carb" calculation that assigns a value of zero to sugar alcohols.

## CLASS ACTION ALLEGATIONS

56.     Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and the following proposed Class:

> Residents of California who have purchased Atkins's products in the State of California that contained sugar alcohols and were labeled and marketed with the "net carbs" calculation.

57.     Excluded from the proposed Class are Defendants, any affiliate, parent, employee or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned, as well as his or her immediate family.

58.     This action has been brought and may be properly maintained as a class action under Federal Rule of Civil Procedure 23.

59.     **Numerosity of the Class – Rule 23(a)(1).**  Class members are so numerous that their individual joinder is impracticable.  While the exact number of class members is unknown to Plaintiff at the present time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of class members located throughout California. These members are readily ascertainable, such as through sales receipts.

CLASS ACTION COMPLAINT

60.  **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

a.  Whether Atkins misrepresented / concealed the sugar alcohol content on the label of its products identified with the "net carbs" designation;

b.  Whether Atkins was aware of its deception and/or omissions;

c.  Whether Atkins's deception is material;

d.  Whether Atkins concealed the true nature of its product;

e.  Whether Atkins profited from its concealment;

f.  Whether Atkins had a duty to disclose the correct sugar alcohol content and/or true identity of its products with the "net carbs" label;

g.  Whether Atkins's conduct harmed Plaintiff and the Class;

h.  Whether Atkins has engaged in unlawful, unfair, or fraudulent business practices in violation of California law;

i.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including declaratory relief, restitution, and/or rescission.

CLASS ACTION COMPLAINT

61.   **Typicality – Rule 23(a)(3).**   Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff purchased Atkins products bearing the "net carbs" label that contained sugar alcohols.

62.   **Adequacy of Representation – Rule 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

63.   **Superiority - Rule 23(b)(3).**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

CLASS ACTION COMPLAINT

64. As an alternative to class certification under Rule 23(b)(3), the proposed Class may be certified under 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class.

## FIRST CAUSE OF ACTION
**Violation of California Business and Professions Code §§ 17200** *et seq.*
**(Plaintiff, individually and on behalf of the Class)**

65. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

66. Plaintiff asserts this cause of action on behalf of herself and the proposed Class against Defendant under the California Business and Professions Code §§ 17200 *et seq.*

67. California law prohibits unfair competition, which is defined as "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising…." Cal. Bus. & Prof. Code § 17200; see also  17203. Defendants have violated and continue to violate this Unfair Competition Law ("UCL").

68. Throughout the class period, Atkins engaged in unlawful business acts and/or practices by:

CLASS ACTION COMPLAINT

a.    Marketing, advertising, and selling products with the "net carbs" label without disclosing and omitting the true carbohydrate count of those products.

b.    Asserting that sugar alcohols had effectively zero impact on blood sugar.

c.    Marketing, advertising, and selling products using the "Atkins" name without disclosing and omitting that the products were not consistent with the philosophy of the diet and company's eponymous founder.

69.    Atkins's conduct was misleading and deceptive, and unlawful because it violated the California Business & Professions Code §§ 17500 *et seq.;* California's Sherman Food, Drug, and Cosmetics Act, Cal. Health & Safety Code § 109875 *et seq.*; the Consumer Legal Remedies Act, codified at California Civil Code § 1750 *et seq.*; and other applicable state and federal laws and regulations.

70.    The acts, omissions, and practices alleged herein also constitute unfair business acts and practices in that Atkins's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from deceiving consumers.

71.    As a direct result of Atkins's unlawful, unfair or fraudulent business acts and/or practices, Plaintiff and members of the Class suffered injury in fact and lost money or property.

72.    Accordingly, Plaintiff, on behalf of herself and the Class, seeks restitution against Atkins, and other relief as specifically prayed for herein.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
### Violation of California Business and Professions Code §§ 17500 *et seq.*
### (Plaintiff, individually and on behalf of the Class)

73. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

74. Plaintiff asserts this cause of action on behalf of herself and the Class against Defendant under the California Business and Professions Code §§ 17500 *et seq.*

75. Throughout the class period, Atkins engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500 *et seq.* by engaging in the sale of misrepresented "net carbs" products identified herein and publicly disseminating various advertisements that Atkins knew or reasonably should have known were untrue and misleading. Atkins committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on basis of objective circumstances.

76. Atkins's advertisements, representations, and labeling were designed to, and did, result in the purchase of "net carbs" products, and Atkins profited from the sale of its product to unwary consumers.

77. Plaintiff and the Class suffered injury in fact and lost money as a direct result of Atkins's misconduct.

78. Accordingly, Plaintiff, on behalf of herself and the Class, seeks relief against Atkins in the form of an order prohibiting Atkins from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

CLASS ACTION COMPLAINT

### THIRD CAUSE OF ACTION
**Breach of Express Warranty – Violation of
California Commercial Code § 2313
(Plaintiff, individually and on behalf of the Class)**

79. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

80. Plaintiff asserts this cause of action on behalf of herself and the proposed Class against Defendant under Cal. Com. Code § 2313.

81. Under Cal. Com. Code § 2313, an express warranty is created by an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. Additionally, a description of the goods which is made part of the basis of the bargain also creates an express warranty.

82. Atkins made an affirmation of fact or promise relating to its goods pursuant to Cal. Com. Code § 2313 when it represented on the label of its products that they contained a limited number of "net carbs."

83. Atkins's representation of the carbohydrate content and/or identity on the label of its products constitutes a description of the goods pursuant to Cal. Com. Code § 2313(1)(b).

84. Plaintiff and the Class were exposed to Atkins's representations on the label of its products when they purchased the product.

85. Atkins's representations on the label of its "net carbs" products were material to the Plaintiff and the Class in their decision to purchase the product.

CLASS ACTION COMPLAINT

86.    Atkins's representations of carbohydrate content and/or identity on the label of its products were part of the basis of the bargain when Plaintiff and the Class purchased the product.

87.    Atkins breached its express warranty when its "net carbs" products did not conform to the affirmations made by Atkins on the label.

88.    As a direct result of Atkins's breach of express warranty, Plaintiff and the Class have been damaged in that they spent more than they otherwise would have for the product.

### FOURTH CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**Violation of Cal. Com. Code § 2314**
**(Plaintiff, individually and on behalf of the Class)**

89.    Plaintiff, on behalf of herself and the proposed Class, repeats and re-alleges all paragraphs previously alleged and incorporates those allegations into this cause of action as though fully set forth herein.

90.    Defendants are, and at all relevant times were, in the business of manufacturing and selling food products to consumers such as Plaintiff and members of the proposed Class. As part of this business enterprise, Defendants manufactured, tested, advertised, promoted, packaged, marketed, sold, and/or distributed Atkins brand products with packaging that contained "net carbs" representations that falsely underrepresented the true number of carbohydrates that the food products actually contained. Defendants sold such products to Plaintiff and members of the proposed Class.

CLASS ACTION COMPLAINT

91.   At the time Defendants manufactured, tested, advertised, promoted, packaged, marketed, sold, and/or distributed Atkins brand products with packaging that contained "net carbs" representations that falsely underrepresented the true number of carbohydrates that the food products actually contained, for use by Plaintiff and the class members, Defendants knew that the products would be ingested, and impliedly warranted that the products were of merchantable quality and fit for their ordinary purpose.

92.   Plaintiff and members of the proposed Class purchased these products that were manufactured and marketed by Atkins and sold by intermediary retail outlets, including Target and Wal-Mart.   Plaintiff and members of the proposed Class purchased these products based on the mistaken belief, engendered by Defendants' concealments and misrepresentations, that the products contained fewer weight-affecting and blood-sugar-level affecting carbohydrates than they actually contained. Defendants' representations and warranties in this regard were false, misleading, and inaccurate, in that the products were not of merchantable quality because the products were defective, would not pass without objection in the trade, were not fit for ordinary purposes, did not conform to the promises on the labeling, and were potentially harmful and undesirable to consumers of products who sought to consumer foodstuffs that did not elevate their blood sugar and did not cause weight gain.

93.   Defendants breach the implied warranty of merchantability because the products that Defendants manufactured, packaged, and marketed, could not and

CLASS ACTION COMPLAINT

did not deliver on the advertised and labeled claims with respect to the "net carbs" representations made by Defendants.

94.    Defendants' products that were purchased by Plaintiff and members of the proposed Class, did not have even the most basic degree of fitness for ordinary use as a diet food, in that at the time of Defendants' marketing and sale of the products, and at the time of Plaintiff's and the class members' purchase of the products, the products contained carbohydrates in greater numbers than the packaging suggested. Purchasers of Atkins brand food products, including Plaintiff and members of the proposed Class, specifically purchased and purchase Atkins products because Dr. Atkins has long promoted the consumption of low-carb foods as a healthful diet and a method of managing weight. The fact that the products contained a much greater number of carbohydrates than claimed in Defendants' "net carbs" representations rendered the products not reasonably suitable for their ordinary uses.

95.    Plaintiff and the members of the proposed Class relied on the implied warranty of merchantability in their selection, purchase, and consumption of these diet products. Plaintiff and the members of the proposed Class reasonably relied on the skill and judgment of Defendants, as manufacturers and marketers of diet products, to select, produce, and sell to consumers only those diet products that were of merchantable quality because they were suitable for the purpose that consumers reasonably use diet products for—that is, for human consumption of food that will not or will only minimally elevate their blood sugar and/or cause weight gain.

96.   Defendants placed their diet products into the stream of commerce with higher carbohydrate content than represented, despite the fact that these products were expected to, and did, reach users, consumers, and other persons coming into contact with these products, without substantial change in the condition that they were packaged, marketed, and sold.

97.   Neither Plaintiff nor any member of the proposed Class was required to provide pre-suit notice to Defendants of their claim for breach of the implied warranty of merchantability because Defendants were remote manufacturers with whom the purchaser did not deal. Plaintiff and members of the proposed Class are consumers who purchase food products from retailers rather than directly from manufacturers, and Plaintiff and members of the proposed Class purchased Defendants' products from retailers.

98.   Additionally, neither Plaintiff nor any member of the proposed Class is required to establish privity of contract with Defendants because Plaintiff and each member of the proposed Class is an intended third-party beneficiary of contracts between Defendants and the retailers from whom Plaintiff and the proposed Class members purchased Defendants' manufactured products, and specifically were intended third-party beneficiaries of Defendants' implied warranties and agreements. Defendants' warranty agreements were designed for and intended to benefit Plaintiff and the proposed Class.

99.   Privity also is not required because Defendants' products were foodstuffs. Considerations of public policy demand that the utmost care and caution be exacted from the manufacturer of articles of food, in order to protect

CLASS ACTION COMPLAINT

consumers from injuries resulting from the ingestion of products that manufacturers warrant are suitable for human consumption.

100. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff and the members of the proposed Class suffered and/or will continued to be harmed and suffer economic loss, in that Plaintiff and the members of the proposed Class spent money purchasing Defendants' products that they could not reasonably nor safely use for the intended purpose of consuming food that did not elevate their blood sugar levels or foster weight gain. The failure of Defendants' products to have their expected and advertised qualities, of being suitable for consumption as a diet food, was a substantial factor in causing Plaintiff and the members of the proposed Class to suffer economic loss.

101. As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff and the members of the proposed Class have suffered damages and are entitled to compensatory damages, costs, and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Violations of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. §§ 2301 et seq.**
**(Plaintiff, individually and on behalf of the Class)**

102. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

103. Defendants' products are consumer products that cost more than $5; and the amount in controversy with respect to the individual claim of Plaintiff and of each member of the proposed Class, is greater than $25.

CLASS ACTION COMPLAINT

104.   Plaintiff and the Class are "consumers" as defined in 15 U.S.C. § 2301(3), in that they are persons entitled under applicable state law to enforce against the warrantor the obligations of their express and implied warranties.

105.   Defendants are "suppliers" and "warrantors" as defined in 15 U.S.C. §§ 2301(4) and (5).

106.   Under 15 U.S.C. § 2301(d)(1), the MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an express or implied warranty.

107.   In connection with their sale of the products described above, Defendants gave a written warranty as defined in section 2301(6).  The particulars of this express warranty are set forth in Plaintiff's Third Cause of Action above and incorporated by reference here. Defendants breached this warranty, as set forth above, depriving Plaintiff and the proposed Class of the benefit of their bargain.

108.   Additionally, in connection with their sale of the products described above, Defendants gave an implied warranty of merchantability as defined in section 2301(7).  The particulars of this warranty are set forth in Plaintiff's Fourth Cause of Action above and incorporated by reference here. Defendants breached this warranty, as set forth above, depriving Plaintiff and the proposed Class of the benefit of their bargain and causing undesired and undesirable physical effects to Plaintiff and the proposed Class from the consumption of the products.

109.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered damages and continue to suffer damages and other losses in an amount to be determined at trial. Neither Plaintiff nor any member of the

proposed Class is required to establish privity of contract with Defendants because Plaintiff and each member of the proposed Class is an intended third-party beneficiary of contracts between Defendants and the retailers from whom Plaintiff and the proposed Class members purchased Defendants' manufactured products, and specifically was an intended third-party beneficiary of Defendants' implied warranties. Defendants' warranty agreements were designed for and intended to benefit Plaintiff and the proposed Class.

110.   Privity also is not required because Defendants' products were foodstuffs.

111.   Plaintiff and the class members have been damaged by Defendants' breaches of warranties and therefore seek damages and other legal and equitable relief, as set forth below, as well as an award of attorneys' fees, costs, and expenses.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, requests judgment and relief as follows:

1.      For an order certifying the proposed Class, and appointing Plaintiff and her counsel of record to represent the proposed Class;

2.      For an order declaring that Atkins has violated California Business and Professions Code §§ 17200 *et seq.*;

3.      For an order declaring that Atkins has violated California Business and Professions Code §§ 17500 *et seq.*;

CLASS ACTION COMPLAINT

4.    For an order declaring that Atkins has breached an express warranty pursuant to California Commercial Code § 2313;

5.    For an order declaring that Atkins breached the implied warranty of merchantability;

6.    For an order declaring that Atkins violated the Magnuson-Moss Warranty Act;

7.    For an order awarding Plaintiff and Class members damages and statutory damages in an amount to be proven at trial, including punitive damages, together with pre-trial and post-trial interest thereon;

8.    For an order awarding Plaintiff and Class members restitution, disgorgement, or other equitable relief as the Court deems proper;

9.    For an order awarding Plaintiff and the Class reasonable attorneys' fees and costs of suit, including expert witness fees; and

10.    For an order awarding such other and further relief as this Court deems just and proper.


///

///

///

CLASS ACTION COMPLAINT

# JURY DEMAND

Plaintiff, on behalf of herself and all similarly situated persons, demands a trial by jury on all issues that are triable to a jury.


Dated: August 11, 2017                     Respectfully submitted,


                                          */s/ Matthew L. Dameron*
                                          Matthew L. Dameron (*pro hac vice*
                                          forthcoming)
                                          Missouri Bar No. 52093
                                          **WILLIAMS DIRKS DAMERON LLC**
                                          1100 Main Street, Suite 2600
                                          Kansas City, Missouri 64105
                                          Telephone:  (816) 945-7110
                                          Facsimile:   (816) 945-7118
                                          matt@williamsdirks.com

                                          -and-

                                          Deborah Rosenthal Cal. Bar No. ____
                                          SIMMONS HANLY CONROY
                                          455 Market Street
                                          Suite #1150
                                          San Francisco, California 94105
                                          Telephone: (415) 536-3986
                                          Facsimile: (415) 537-4120

                                          Jason 'Jay' Barnes, Mo. Bar #57583
                                          BARNES & ASSOCIATES
                                          219 E. Dunklin Street, Ste. A
                                          Jefferson City, MO 65101
                                          Telephone:  (573) 634-8884
                                          Facsimile:   (573) 635-6291

                                          ***Counsel for Plaintiff and the Class***

31

CLASS ACTION COMPLAINT