UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHERYL FERNANDEZ, individually
and on behalf of all others similarly
situated,

                              Plaintiff,

v.

ATKINS NUTRITIONALS, INC., and
DOES 1-10,

                              Defendants.

Case No.:  3:17-cv-01628-GPC-WVG

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

**[ECF No. 9]**

        Before the Court is Defendant Atkins Nutritionals, Inc.'s ("Atkins") motion to

dismiss Plaintiff Cheryl Fernandez's complaint.  (ECF No. 9.)  The motion is fully

briefed.  Fernandez filed a response in opposition on November 17, 2017 (ECF No. 22),

and Atkins filed a reply on December 8, 2017 (ECF No. 23).  Pursuant to Local Civil

Rule 7.1(d)(1), the Court finds the matter suitable for adjudication without oral argument.

For the reasons set forth below, the Court GRANTS in part and DENIES in part the

motion to dismiss.

## I.    Allegations

        In this putative class action, Fernandez claims that Atkins misleadingly labels its

snack products with regard to their "net" carbohydrate content.  Fernandez's complaint

1

1    alleges the following facts.

2        Atkins is a company formed by Dr. Robert Atkins "to promote the sale of books

3    and food items related to the 'Atkins Diet,' a low to no carbohydrate diet." (ECF No. 1 at

4    4.)  The Atkins Diet instructs adherents to limit their intake of carbohydrates that impact

5    their blood sugar level.  (*Id.* at 5–6.)  In a book published in 1999, Dr. Atkins wrote that

6    artificial sweeteners were "not allowed" under his diet.  (*Id.* at 5.)  In a newer version of

7    the book published in 2002, Dr. Atkins "revised this prohibition" by indicating that

8    "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable."

9    (*Id.*)  Fernandez alleges that this change was the result of Atkins's establishing a

10   "growing line of food products that [contained] sugar alcohols."  (*Id.*)

11       On its product labels, Atkins often refers to a unit of measurement called "net

12   carbs."  According to Atkins's website, net carbs are "the total carbohydrate content of

13   the food minus the fiber content and sugar alcohols," resulting in the measurement of

14   "grams of carbohydrate that significantly impact your blood sugar level and therefore are

15   the only carbs you need to count when you do Atkins."  (*Id.*)  The net carbs calculation

16   does not count the "carbohydrates in fiber, glycerine, and sugar alcohols" because those

17   carbohydrates "don't break down and convert to blood sugar."  (*Id.* at 6.)  Atkins suggests

18   on its website that this net carb calculation is based on "science."  (*Id.* at 5.)  "Atkins

19   manufactures, distributes, markets, advertises, and sells [food] products containing sugar

20   alcohols [such as maltitol] as replacements for ordinary carbohydrates."  (*Id.* at 6.)

21       At issue in this case is Atkins's placement of "net carb" calculations on the outer

22   labeling of its snack products.  For example, the label on Atkins's "Chocolate Candies"

23   states that the product contains "1g Net Carb."  (*Id.* at 7.)  This one-gram net carb amount

24   is reached by subtracting the grams of carbohydrates attributable to dietary fiber (4g) and

25   sugar alcohols (14g) from the total grams of carbohydrates (19g).  (*Id.* at 8.)  For

26   purposes of this ruling, the Court refers to such statements—"_g Net Carb(s)"—as "net

27   carbs claims."

28       Fernandez alleges that Atkins's method of calculating net carbs "conflicts with the

2

method espoused by Dr. Atkins in his books" because Dr. Atkins had written in the past that only fiber should be deducted from the calculation of net carbohydrates, not sugar alcohols. (*Id.* at 8–9.) Atkins "does not disclose the conflict between Dr. Atkins's espoused method of calculating 'net carbs' and the method used by the company." (*Id.* at 9.) Fernandez alleges that "authoritative scientific research on sugar alcohols" from the Diabetes Teaching Center at the University of California, San Francisco; the Mayo Clinic; and the Canadian Journal of Diabetes suggest that sugar alcohols, "particularly maltitol, . . . continue to have a significant impact on blood sugar levels." (*Id.* at 9–10, 13.) According to Fernandez, "no independent scientist, doctor, or researcher agrees with Atkins's assertion that maltitol and other sugar alcohols have a net energy value of zero." (*Id.* at 10.) Fernandez alleges that Atkins "conceals this fact from consumers, and does not disclose this fact in its labeling or representations to consumers." (*Id.* at 10.)

Fernandez thus asserts that the term "net carbs," as used by Atkins on its products, is misleading. According to Fernandez, the FDA has not regulated this phrase, but has noted in warning letters that the phrase "may be misleading to consumers." (*Id.* at 12.) In 2014, the Wall Street Journal reported that Atkins "would discontinue using the term 'net carbs' on its food labels because the term is 'imprecise,'" but Atkins ultimately chose not to discontinue its use of the phrase. (*Id.* at 13–14.)

Fernandez's complaint asserts the following claims: (1) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) breach of an express warranty in violation of Cal. Com. Code § 2313; (4) breach of the implied warranty of merchantability in violation of Cal. Com. Code § 2314; and (5) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*

## II.    Legal Standards

A Rule 12(b)(6) motion attacks the complaint as not containing sufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule

12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In addition to its contention that Fernandez's allegations are insufficient to state a plausible claim, Atkins disputes Fernandez's standing to seek injunctive relief. This amounts to a challenge of the Court's subject matter jurisdiction under Rule 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "An attack on subject matter jurisdiction may be facial or factual. 'In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Here, Atkins's jurisdictional challenge is facial—it offers no evidence to prove that Fernandez lacks standing to pursue injunctive relief, and instead points solely to the allegations in her complaint. Because "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)," *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), the Court applies the legal standard appropriate for a Rule 12(b)(6) motion to Atkins's standing argument.

Finally, when alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This standard applies to Fernandez's UCL and FAL claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("Rule 9(b)'s particularity requirement applies to" UCL claims); *Yumul v.*

*Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122–23 (C.D. Cal. 2010) (FAL claims). "To avoid dismissal for inadequacy under Rule 9(b), a complaint [must] state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Yumul*, 733 F. Supp. 2d at 1122 (internal quotation marks omitted). In other words, the allegations must plead the "who, what, when, where, and how of the misconduct charged." *Id.* at 1123 (internal quotations omitted).

## III. Discussion

Atkins contends that the Court should dismiss Fernandez's claims for the following reasons: (1) federal law preempts Fernandez's state law claims; (2) the Court should invoke the "primary jurisdiction" doctrine; (3) the UCL and FAL claims fail to meet Rule 9(b)'s heightened pleading standard; (4) the implied warranty of merchantability claim fails to state a claim for relief; (5) the MMWA claim fails to allege an applicable warranty made by Atkins; and (6) Fernandez lacks standing to pursue injunctive relief.

### A. Preemption

Atkins argues that Fernandez cannot pursue her state law claims because federal law expressly preempts them. The court must "start with the presumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). One species of preemption is "express preemption," which "occurs when Congress enacts a statute that expressly commands that state law on the particular subject is displaced." *United States v. 4, 432 Mastercases of Cigarettes, More or Less*, 448 F.3d 1168, 1189 (9th Cir. 2006) (quoting *Gadda v. Ashcroft*, 377 F.3d 934, 944 (9th Cir. 2004)). Atkins argues that, through 21 U.S.C. § 343-1(a)(5), Congress has done exactly that.

### i. Statutory and Regulatory Framework

To evaluate Atkins's preemption argument, the Court must navigate the labyrinth of federal food labeling requirements. The statutory provisions discussed below were

enacted as part of the Federal Food, Drug, and Cosmetic Act ("FDCA") and, later, the Nutrition Labeling and Education Act ("NLEA"), both of which govern labeling of food. Neither the FDCA nor the NLEA "permit private causes of action to enforce" their requirements and limitations, so "[a] plaintiff seeking remedies for mislabeled or misbranded products must do so through an appropriate state law vehicle." *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-cv-4213-MDH, ECF No. 57 (W.D. Mo. Mar. 29, 2017).

Three federal statutory provisions are relevant to Atkins's preemption argument: 21 U.S.C. §§ 343(q), 343(r), and 343-1. The Court begins with § 343(q), which governs the familiar "nutrition facts" box found on food labels across the country. In relevant part, § 343(q)(1)(D) states that a food label must indicate the food's amount of certain nutrients, including "[t]otal fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size or other unit of measure." Section 343(q)(2) empowers the Food and Drug Administration ("FDA") with the ability to add nutrients to (or remove nutrients from) § 343(q)(1)'s list.

The FDA has promulgated comprehensive rules governing nutrition-box information, found at 21 C.F.R. § 101.9. Section 101.9(c) sets forth further requirements with respect to the nutrients that must be included in the nutrition-facts box. With respect to this case, the relevant requirements are found at § 101.9(c)(6), covering "'Carbohydrate, total' or 'Total carbohydrate.'" That provision requires that food labels include, *inter alia*, "[a] statement of the number of grams of total carbohydrate in a serving," *id.* § 101.9(c)(6), and "[a] statement of the number of grams of total dietary fiber in a serving," *id.* § 101.9(c)(6)(i). It also names several nutrients that can be declared "voluntarily," one of which is sugar alcohol. Section 101.9(c)(6)(iv) states: "[a] statement of the number of grams of sugar alcohols in a serving may be declared voluntarily on the label, except that when a claim is made on the label or in labeling about sugar alcohol or total sugars, or added sugars when sugar alcohols are present in

the food, sugar alcohol content shall be declared."

Next, 21 U.S.C. § 343(r) governs "nutrition levels and health-related claims." In essence, § 343(r) governs claims about the nutrient content of a food made outside of the nutrition-facts box.[1] In relevant part, § 343(r)(1) deems a food "misbranded"—and, as such, "prohibited," *id.* § 331(a)—if the label "characterizes the level of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food unless the claim is made in accordance with subparagraph (2)." *Id.* § 343(r)(1)(A). Put differently, if a food's label makes a characterization of its nutrient content, and that nutrient is "of the type" that is "required" to be included in the nutrition-facts box by § 343(q)(1) or (q)(2), § 343(r)(1) requires that characterization to comply with the requirements and limitations set forth in § 343(r)(2). The FDA refers to characterizations governed by § 343(r) as "nutrient content claims." *See* 21 C.F.R. § 101.13.

The FDA's regulations regarding nutrient content claims are found at 21 C.F.R. § 101.13. Section 101.13(i) sets forth the various kinds of nutrient content claims that may be made on a food label. The type relevant here is what the FDA refers to as an "express claim," governed by § 101.13(i)(3). That provision states that "the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and *it is not false or misleading in any respect*." *Id.* § 101.13(i)(3)

---

[1] As will be discussed in further detail below, § 343(r) applies to characterizations of nutrients "of the type" required by § 343(q), but does *not* apply to the information inside the nutrition-facts box. *See* 21 U.S.C. § 343(r)(1) ("A statement of the type required by paragraph (q) that appears as part of the nutrition information required or permitted by such paragraph is not a claim which is subject to this paragraph and a claim subject to clause (A) is not subject to clause (B)."). A nutrient content claim governed by § 343(r)(2) is thus any claim outside of the nutrition-facts box that the manufacturer has chosen to make about the same kind of nutrients discussed inside the class nutrition information box. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) ("[Section 343(r)] governs all *voluntary* statements about nutrient content or health information a manufacturer chooses to include on a food label or packaging.").

(emphasis added).

Last, 21 U.S.C. § 343-1 contains the NLEA's preemption provision.  In passing the NLEA, Congress stated that the law "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]." Pub. L. No. 101-535, §(6)(c)(1), 104 Stat. 2353, 2364.  Section 403A is codified at 21 U.S.C. § 343-1, which states in relevant part that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement[2] respecting any claim of the type described in [§ 343(r)(1)], made in the label or labeling of food that is not identical to the requirement of [§ 343(r)]." 21 U.S.C. § 343–1(a)(5).  For purposes of § 343-1, "'not identical to' means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food that are not imposed by or contained in the applicable federal regulation." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (internal quotation marks omitted).  In other words, Fernandez's state law claims are not preempted so long as they "effectively parallel[] or mirror[] the relevant sections of the NLEA." *See Chacanaca*, 752 F. Supp. 2d at 1118.

A brief recap.  Federal law preempts state law to the extent that state law imposes a requirement on nutrition content claims governed by § 343(r)(1) that are not identical to the requirements set forth in § 343(r) generally.  Nutrient content claims are characterizations about a food's content of nutrients "of the type required by paragraph (q)(1) or (q)(2)."  Finally, 21 C.F.R. § 101.13(i)(3) permits manufacturers to make express nutrient content claims so long as they are "not false or misleading in any respect."  The combined force of Sections 343-1(a)(5), 343(q), and 343(r) establishes that

---

[2] "Requirement" in this context applies not only to positive state law, but also "common-law duties and judge-made rules." *Chacanaca*, 752 F. Supp. 2d at 1118 (citing *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 443 (2005)).

3:17-cv-01628-GPC-WVG

Fernandez's state law claims escape preemption only if Atkins's net carbs claims either (1) are not nutrient content claims, or (2) are nutrient content claims, but violate Section 343(r) and/or related regulations. *See, e.g.*, *Chacanaca*, 752 F. Supp. 2d at 1119. The Court addresses these issues in turn.

### ii. Whether Net Carbs Claims Are Nutrient Content Claims

Atkins argues that its net carbs claims are nutrient content claims governed by § 343(r) because net carbs "derive" from a calculation involving nutrients discussed in 21 C.F.R. § 101.9(c)(6), *i.e.*, total carbohydrates, dietary fibers, and sugar alcohols. Fernandez, in response, argues that net carbs claims are not nutrient content claims because a "net carb" is not a nutrient required to be disclosed by 21 U.S.C. § 343(q) or 21 C.F.R. § 101.13.

Atkins relies heavily on the court's decision in *Johnson*, which addressed the same exact question. *Johnson*, No. 2:16-cv-4213-MDH, ECF No. 57. There, the plaintiff alleged that Atkins's net carbs claims were misleading in violation of Missouri law.[3] *Id.* at 2–3. The court found that Atkins's net carbs claims were nutrient content claims, and rejected the plaintiff's argument that "net carbs" are not nutrients under § 343(q) because that term is not listed in 21 U.S.C. § 343(q) or 21 C.F.R. § 101.13. The court reasoned that the "FDA has explicitly said that Section 343(r)(1)(A) is not limited by the Nutrition Facts label, but encompasses 'nutritional substances.'" *Id.* at 12 (citing Food Labeling; Requirements for Nutrient Content Claims, Health Claims, and Statements of Nutritional Support for Dietary Supplements, 62 Fed. Reg. 49,859, 49,859–60 (Sept. 23, 1997)). Because "net carbs" are simply the difference between (1) total carbohydrates and (2) dietary fibers and sugar alcohols, the court concluded, "[t]here can be little doubt that what remains, a subset of carbohydrates, is a nutritional substance." *Id.* The court also

_____

[3] The plaintiff in *Johnson* also challenged other label claims, such as "Only _g Net Carbs," and "Counting Carbs? The Net Carb Count helps you count carbs that impact your blood sugar. Fiber and sugar alcohols, including glycerin, should be subtracted from the total cars since they minimally impact blood sugar." *Id.* at 2. Those claims are not at issue in this case.

relied on several FDA Warning Letters, including one suggesting that the statement "Only 2g Digestible Carbs" was an unauthorized nutrient content claim, and another stating that the FDA is "not generally objecting to additional quantitative 'net' carbohydrate statements that are truthful and not misleading," so long as the manufacturer disclosed the method used to calculate net carbs. *Id.*; *see also id.* (citing another FDA warning letter that suggested the manufacturer's net carbs claims may be unlawful because the label does not indicate how net carbs are calculated). In light of the FDA's positions, the court concluded that net carbs claims were express nutrient content claim under § 343(r)(1)(A). *Id.* at 13.

This Court agrees with the outcome reached by the court in *Johnson*, but takes a different route to get there. Putting aside the FDA's legal positions discussed in its warning letters, the Court finds that the plain text of the relevant statutory provision places net carbs claims within the bounds of § 343(r). To explain why that is the case, the Court finds it helpful to address Fernandez's arguments to the contrary.

First, as mentioned, Fernandez argues that a "net carb" is not a "nutrient" under § 343(r) because the phrase "net carb" (or variations of that phrase) appears nowhere in § 343(q) or 21 C.F.R. § 101.9. (ECF No. 22 at 11.) While Fernandez is correct that this phrase does not appear in the statutory or regulatory text, she fails to explain why that fact is dispositive. To the contrary, the phrase's absence makes no difference in this analysis. Section 343(r)(1) governs claim regarding "any nutrient which is *of the type* required by paragraph (q)(1) and (q)(2)." The phrase "of the type" broadens the scope of § 343(r)'s purview beyond those specifically enumerated in § 343(q) and related regulations. Imagine, for example, that Julia's grandmother is about to enjoy some pie and asks Julia to go into the kitchen and grab a utensil "of the type" of a spoon or fork. If Julia returns with a spork, her grandmother cannot be upset with Julia's choice; while neither a spoon nor a fork, a spork is surely "of the type" of those two items. In the same sense, net carbs are nutrients "of the type" of those listed in § 343(q) and its regulations. Total carbohydrates, dietary fiber, and sugar alcohols are all discussed in 21 C.F.R.

§ 101.9(c)(6).  *See* 21 C.F.R. § 101.9(c)(6) (total carbohydrates); *id.* § 101.9(c)(6)(i) (dietary fiber); *id.* § 101.9(b)(6)(iv) (sugar alcohol).  Just as a spork is "of the type" of utensils such as forks and spoons, a configuration of total carbohydrates, dietary fibers, and sugar alcohols, is "of the type" of those three nutrients.

As a second—but similar—argument, Fernandez points out that § 343(r) governs characterizations of nutrients of the type "*required* by (q)(1) or (q)(2)."  According to Fernandez, § 343(r) does not apply to claims about net carbs because "net carbs" is not a nutrient "required" to be placed on food labels by § 343(q) and its related regulations.  Again, this argument misses the effect of the "of the type" language in § 343(r)(1).  What matters for purposes of § 343(r)(1) is not whether a nutrient is required to be disclosed by § 343(q) or its regulations, but rather whether a nutrient is *of the type* of such nutrients.  Because "net carbs" is a configuration of nutrients listed in the regulations promulgated under § 343(q),[4] it is a nutrient of the type of those required by § 343(q).

Contrary to Fernandez's assertion, the court's decision in *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015), does not support her position that net carbs claims are not nutrient content claims.  In *Reid*, the court was asked to determine whether the plaintiff's claims—that defendant's label statements were false—were preempted by federal law.  In describing the meaning of "nutrient content claims," the court wrote:

> Under the FDA regulations, the general rule is that 'nutrient content claims' are not permitted on food labels.  Nutrient content claims are statements that 'expressly or implicitly characterize[] the level of a nutrient.'  However, the

---

[4] The Court acknowledges that 21 C.F.R. § 101.9(c)(6)(iv) does not *require* disclosure of the sugar alcohol content of food, but rather makes it permissible (unless there is also a claim on the label regarding (1) sugar alcohol, (2) total sugars, or (3) added sugars when sugar alcohols are present in the food, in which case disclosure it mandatory).  This makes little difference for two reasons.  First, even assuming that sugar alcohols are not nutrients "required" to be included on the label by § 343(q), "net carbs" is still "of the type" of the remaining two nutrients that § 343(q) requires to be disclosed, total carbohydrates and dietary fiber.  Second, the only example of Atkins's labels cited in Fernandez's complaint also makes a claim about the amount of sugar contained in the product (*see* ECF No. 1 at 7), in which case § 343(q) would require Atkins to declare the amount of sugar alcohol in the product.  *See* 21 C.F.R. § 101.9(c)(6)(iv) (if there is a nutrient content claim regarding total sugars, disclosure of the sugar alcohols content is mandatory).

regulations do authorize some nutrient content claims. These include statements about the amount or percentage of a nutrient that are consistent with the labeling regulations (e.g., 'less than 3 g of fat per serving'), similar statements that include a disclaimer (e.g., 'only 200 mg of sodium per serving, not a low sodium food'), or statements that do not characterize the level of nutrient and are not false or misleading (e.g., '100 calories').

*Reid*, 780 F.3d at 959–60 (quoting, *inter alia*, 21 C.F.R. § 101.13(i)). Fernandez seems to argue that, in light of this discussion, nutrients—for purposes of § 343(r)(1)—must be explicitly listed in § 343(q) or its regulations. (*See* ECF No. 13.) Of course, the quoted language above suggests no such thing. To the contrary, the court in *Reid* was merely reciting examples that § 101.13(i) itself lists.

As a final matter, the Court notes that Fernandez's interpretation—which limits § 343(r)(1)'s application to nutrients that § 343(q) and its regulations expressly require to be mentioned on a label—would render the phrase "of the type" mere surplusage. In other words, under Fernandez's reading, § 343(r)(1) would have the same meaning with or without the phrase "of the type." The Court's "practice, however, is to give effect, if possible, to every clause and word of a statute." *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1659 (2017). As a result, the Court cannot accept Fernandez's reading of § 343(r)(1).

In sum, because "net carbs" is a configuration of nutrients "of the type" required to be mentioned on a label by § 343(q) and its regulations, the Court finds that Atkins's net carbs claims are nutrient content claims governed by § 343(r)(1).

### iii. Whether Atkins's Net Carbs Claims Comply with § 343(r)

Having concluded that net carbs claims are nutrient content claims governed by § 343(r)(1), the Court must next address whether Fernandez's state law claims impose requirements "identical to the requirement of section 343(r)." 21 U.S.C. § 343-1(a)(5). Put another way, the Court must determine whether Atkins's net carbs claims comply with § 343(r). If they do, Fernandez cannot pursue any state law claim—even if her complaint states a claim under state law, that aspect of state law would be preempted by

12

§ 343-1(a)(5).  If the net carbs claims do not comply with § 343(r), Fernandez may pursue a state law claim to the extent that the net carbs claims violate federal law.

Section 343(r)(1) prohibits nutrient content claims "unless the claim is made in accordance with" § 343(r)(2), which sets forth a long list of requirements.  As stated above, the FDA has also promulgated rules regarding nutrient content claims, including the requirement that express nutrient content claims not be "false or misleading in any respect."  21 C.F.R. § 101.13(i)(3).  For the reasons explained below, Fernandez's allegations are sufficient to state a plausible claim that Atkins's net carbs claims are misleading in some respect, in violation of § 101.13(i)(3).

As an initial matter, the Court rejects Atkins's argument that its net carbs claims are valid under § 343(r) because the FDA has "permitted" them.  This argument is flawed for two reasons.  First, Atkins's argument suggests that an agency's failure to promulgate a rule prohibiting the term "net carbs" is "tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit."  *Astiana*, 783 F.3d at 758.  As the Ninth Circuit reasoned in *Astiana*, "[t]his argument proves too much.  By this logic, a manufacturer could make any claim—wild, untruthful, or otherwise—about a product whose contents are not addressed by a specific regulation."  *Id.*

Second, the FDA documents Atkins offers in support of its motion demonstrate that Atkins's assertion that the FDA has "permitted" net carbs claims is inaccurate.  Atkins offers the following FDA actions as evidence that the FDA "permits" net carbs claims.  In 2005, in responding to petitions regarding the legality of carbohydrate-related nutrient content claims, the FDA stated that it "intend[ed] to provide guidance to food manufacturers on the use of the term 'net' in relation to the carbohydrate content of food."[5]  (ECF No. 9-8.)  Later that year, in a letter to the National Consumers League, the

---

[5] The Court takes judicial notice of official FDA guidance documents.  *See, e.g.*, *Wilson v. Frito-Lay N.A., Inc.*, No. 12-cv-01586-JST, 2017 WL 4023152, at *2 (N.D. Cal. May 26, 2017) ("Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website.").

FDA wrote that, "[w]ith respect to 'net carbohydrate' labeling, although FDA has not issued guidance regarding the use of such statements, the agency has not generally objected to the use of 'net carbohydrate' type information on food labels *if the label adequately explains how the terms are used so that it would not be false or misleading to consumers*." (ECF No. 9-9 at 1 (emphasis added).) In 2005, the FDA also responded to a Unilever letter—which apparently asserted that Atkins's net carbs claims should not be permitted—by stating:

> As you know, firms are not prohibited from declaring other quantitative information outside of the nutrition label provided the additional information is not false or misleading. We recognize that there are various types of quantitative "net'" claims in the marketplace. At this time, however, we are not generally objecting to additional quantitative "net" carbohydrate-type statements *that are truthful and not misleading; for example, where the "net" terms are sufficiently explained on the label so that the consumer understands the meaning of the use of such terms*.

(ECF No. 9-10 at 1 (emphasis added).) In 2016, the FDA published a final rule titled "Food Labeling: Revision of the Nutrition and Supplement Facts Labels," in which it declined to change its "current method of calculating carbohydrate by difference," primarily because labels must include, in addition to the amount of total carbohydrates, the amount of dietary fiber. 81 Fed. Reg. 33,742, 33,794–95 (May 27, 2016). Atkins also points the Court to instances in which the FDA has sent warning letters to manufacturers suggesting that their net carbs claims might be deemed misbranding *because the product labels do not adequately explain how they calculate net carbs*. (*See* ECF Nos. 9-14, 9-15.)

Taking these FDA statements together, it cannot be said that the FDA has "permitted" net carbs claims. Rather—as the FDA repeatedly stated in the statements above—net carbs claims may be permissible, but only if they are not false or misleading, and they adequately explain the formula for calculating net carbs.

To determine whether Atkins's net carbs claims are consistent with federal law, then, the Court asks the following question: taking the facts alleged in the complaint as

true and drawing all reasonable inferences in Fernandez's favor, can the Court conclude that as a matter of law Atkins's net carbs claims are not "false or misleading in any respect"? The Court answers no, for the same reason cited in the FDA's letters that Atkins itself offers.

According to the complaint, Atkins places on the label of its products a statement that the product contains "_g Net Carb[s]." (ECF No. 1 at 7.) Nowhere in the complaint does Fernandez allege that Atkins's labels also contain an explanation of how it calculates net carbs.[6] At this stage, the Court is required to infer that Atkins's labels do not contain any such explanation. *See Sharkey v. O'Neal*, 778 F.3d 767, 768 n.1 (9th Cir. 2015) (explaining that at the motion to dismiss stage, "we must accept as true all factual allegations in the complaint and *draw all reasonable inferences in favor of the nonmoving party*" (emphasis added)). Without including an explanation on the label as to how Atkins calculates net carbs, its net carbs claims are, at least in some respect, misleading. Consider the label example included by the complaint: if a carb-wary consumer picks up a pack of Atkins Chocolate Candies and looks at the front label, the "1g Net Carb" might mislead her into believing that the product contains a very small amount of carbohydrates, when in reality, the product contains 19 total grams of carbohydrates.

While the Court does not rely on the FDA's warning letters as legal authority for its conclusion, it is worth noting that an adequate explanation of the manufacturer's calculation method for net carbs is what the FDA expressly states it looks for in determining whether a net carbs claim complies with § 101.13(i)(3). (*See, e.g.*, ECF No. 9-14 at 1–2 ("You declare the amount of 'Net Carbs' on your product label; however, the label does not adequately describe how the number of 'net carbs' is derived. It appears

---

[6] While the complaint alleges that Atkins's website describes its method of calculating net carbs, the Court finds that fact irrelevant. A manufacturer cannot cure a misleading statement on a product label by simply providing a further explanation of the statement on the manufacturer's website.

that the 'net carbs' number was calculated by subtracting the number of grams of dietary fiber from the number of grams of total carbohydrate but there was no explanation on the label.  The statement and explanation must be truthful and not misleading.")).

The mandatory inference at this stage—that Atkins does not include its net carbs calculation method on its labels—makes this case different from *Johnson*.  There, in finding that the plaintiff's claims were preempted because they attempted to "require Defendant to utilize a specific method of calculating net carbohydrates," the court explained: "[t]he FDA permits net carbohydrate nutrient content claims so long as the statement is quantitatively true and *the method of calculation is disclosed*."  *Johnson*, No. 2:16-cv-04213-MDH, ECF No. 57 at 13 (emphasis added).  Because the court was presented with allegations that the labels included an explanation of Atkins's method of calculation for net carbs claims, the court found that Atkins's labels met § 101.13(i)(3)'s requirements.  Here, because the Court must assume Atkins's labels do not disclose its net carbs calculation method, the allegations raise a plausible claim that Atkins's net carbs claims violate § 101.13(i)(3).

Thus, Fernandez's state law claims are not preempted to the extent that they are premised on Atkins's failure to disclose on its labels how it calculates net carbs.  The Court also concludes, however—just as the court in *Johnson* did—that federal law *does* preempt California law to the extent that Fernandez seeks to require Atkins to "utilize a specific method of calculating net carbohydrates before making a net carbohydrate nutrient content claim."  *Id.* at 13.  Fernandez fails to point to any aspect of federal law or regulation that requires a specific calculation method of net carbs.  Without any such federal requirement, a state law that would require a particular calculation method would "impose[] obligations . . . concerning the composition or labeling of food that are not imposed by or contained in the applicable federal regulation[s]."  *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014) (quoting 21 C.F.R. § 100.1(c)(4)).

In sum, federal law does not preempt Fernandez's state law claims,[7] but only to the extent that they are based on Atkins's failure to indicate on its labels how it calculates net carbs. Federal law does preempt any state law requirement that prescribes a particular method of calculating net carbs.

## B. Primary Jurisdiction

Atkins contends that the Court should dismiss Fernandez's claims under the primary jurisdiction doctrine. Primary jurisdiction is a limited prudential doctrine that "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[I]t is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (internal quotation marks omitted).

The Court concludes that staying or dismissing this case under the primary jurisdiction doctrine is inappropriate because the primary question presented by this case neither "requires resolution of an issue of first impression" nor is "a particularly complicated issue that Congress has committed to a regulatory agency." With respect to the former condition, as Atkins asserts throughout its briefing, the FDA has long been aware of net carbs claims, yet has opted not to promulgate a rule regarding such claims. "Common sense tells us that even when agency expertise would be helpful, a court

---

[7] Fernandez also argues that her claims are not preempted because Atkins's labels violate 21 U.S.C. § 343(r)(2)(A)(i), which states that a nutrient content claim "may be made only if the characterization of the label made in the claim uses terms which are defined in regulations of the Secretary." Fernandez argues that, because FDA regulations make no mention of "net carbs," Atkins is using a "term" that is not "defined in regulations of the Secretary." The Court disagrees with Fernandez's interpretation of the word "terms" in § 343(r)(2)(A)(i). "Term" in that provision refers to the *characterization* used in a particular nutrient content claim, not the nutrient itself. *See, e.g.*, *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1076 (N.D. Cal. 2016).

should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana*, 783 F.3d at 761. That makes this case different from *Saubers v. Kashi Co.*, cited by Atkins. There, at time of the litigation, the FDA was engaged in rulemaking regarding the claim at issue. 39 F. Supp. 3d 1108, 1112 (S.D. Cal. 2014) ("Because the FDA has been actively revisiting its draft guidance since at least March 5, 2014—indicating that the agency's expert opinion is still being developed—application of the primary jurisdiction doctrine is favored."). Atkins has not suggested that the FDA is engaged in any formal proceedings at this time with respect to net carbs claims.

As for the latter condition, as the *Johnson* court reasoned, to answer the question of whether Atkins's net carbs claims are "false or misleading in any respect" does not require technical expertise held only by the FDA. To the contrary, courts are well equipped to answer that question, and do so on a regular basis. *See Johnson*, No. 2:16-cv-04213-MDH, ECF No. 57, at 19 ("Plaintiff's remaining claims seek a determination as to whether Defendant's product labels related to net carbohydrates are false, misleading, or deceptive. This factual issue does not raise questions requiring technical or specialized expertise — every day courts decide whether conduct is misleading." (internal quotation marks omitted)); *see also Reid*, 780 F.3d at 967 ("The issue that this case ultimately turns on is whether a reasonable consumer would be misled by McNeil's marketing, which the district courts have reasonably concluded they are competent to address in similar cases."); *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2015 WL 3827654, at *6 (C.D. Cal. June 18, 2015) (rejecting application of primary jurisdiction because the plaintiff's "claims turn on whether Defendant's representations concerning the health benefits of Good Start Gentle and the FDA's approval of the formula were false or misleading"); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, No. 12-md-2320-PB, 2013 WL 1124081, at *7 (D.N.H. Mar. 18, 2013) ("The FDA does not have technical expertise related to questions of fraud and deceit. Courts, by contrast, routinely determine whether

past conduct or statements were false or misleading."); *Chacanaca*, 752 F. Supp. 2d at 1124. *Haggag v. Welch Foods, Inc.*—also cited by Atkins—is distinguishable on this basis. There, the court was not tasked with determining whether a label claim was misleading, but instead was asked to determine whether a particular claim fell within the vague definition of "implied health claims." No. CV 13-00341-JGB (OPx), 2014 WL 1246299, at *5 (Mar. 24, 2014). Because that question invoked the FDA's primary role of determining what label claims fell within its regulatory scheme, the court felt that referring the question to the FDA was more appropriate. Here, Atkins concedes that the FDA has, on multiple occasions, stated clearly that manufacturers must explain on their labels how they calculate their net carbs claims.

Because Fernandez's claims present neither a question of first impression for the FDA nor an issue requiring the FDA's specialized expertise, the Court declines to invoke the primary jurisdiction doctrine.

### C. Sufficiency of Allegations

Atkins also argues that several of Fernandez's claims are not supported by adequate factual allegations. The Court addresses each challenge in turn.

### i. UCL and FAL

First, Atkins contends that Fernandez's allegations fail to satisfy Rule 9(b)'s heightened pleading standard as applied to the UCL and FAL claims. As stated above, Rule 9(b) requires a plaintiff's complaint to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Yumul*, 733 F.3d at 1122.

Atkins argues that Fernandez's allegations are insufficient under Rule 9(b) because they do not state when Fernandez purchased Atkins's products. Atkins relies primarily on *Yumul*, in which a plaintiff asserted that a manufacturer had violated the UCL and FAL by labeling its margarine as "cholesterol free" and "healthy" despite containing artificial trans-fat. *Id.* at 1120. The court found the plaintiff's allegations inadequate because, other than the complaint's assertion that the plaintiff had purchased the

margarine "repeatedly" during the class period, it did not allege when the plaintiff experienced the misrepresentations or whether each time she saw the labels, they contained either or both of the statements at issue. *Id.* at 1124. The court also noted that the plaintiff did not allege that the manufacturer's packaging "remained consistent throughout the decade," did not allege "at what retailer or retailers" plaintiff had purchased the margarine, and—because the packaging "may have changed over the course of ten and a half years"—did not adequately identify the packaging on which she relied. *Id.*

As an initial matter, *Yumul* is distinguishable from this case in part because Fernandez's complaint identifies where she bought Atkins's products (Wal-Mart and Target) and alleges that Atkins's products have always contained the same net carbs claim calculated by deducting the amount of dietary fiber and sugar alcohols from the total carbohydrate amount. That leaves the question of whether Fernandez's complaint sufficiently alleges when she purchased Atkins's products.

The complaint states that "[o]ver the course of the last several years and up until just a few months ago, [Fernandez] has purchased at the Wal-Mart and/or Target stores near her home the following Atkins products that have a 'net carbs' designation but still include sugar alcohols," and names six different Atkins products. (ECF No. 1 at 14–15.) Fernandez argues that this is sufficient under Rule 9(b) because other courts have found that "where a plaintiff alleges purchases 'throughout the class period,' then that allegation 'is sufficient to place [a defendant] on notice as to the time period of the allegations.'" (ECF No. 22 at 22 (quoting *Bruton v. Gerber Prods., Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014)). It is true that district courts in this circuit have found allegations that the plaintiff purchased products during the class period,[8] without specifying particular dates, were sufficient under Rule 9(b). *See, e.g.*, *Bruton*,

_____

[8] The Court will refer to these general allegations—that the plaintiff made several purchased throughout the class period—as "class period purchase allegations."

2014 WL 172111 at *13 (allegations that plaintiff "bought the Purchased Products throughout the class period, which runs from May 11, 2008 to the present" were sufficient because they "are sufficient to place [the defendant] on notice as to the time period in which Bruton's allegations arise"); *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724-LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2, 2013) (allegations that plaintiff purchased product "[d]uring the Class Period [April 11, 2008 to present]" were sufficient because the defendant had not argued "that any of the Purchased Product labels changed during the class period"); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (allegation that plaintiff had purchased product "'since at least 2006,' and 'through the class period'" were adequate). Other district courts in this circuit, however, have found that class period purchase allegations do not meet Rule 9(b), mostly relying on *Kearns* and *Yumul*. *See, e.g.*, *Allen v. Similasan Corp.*, No. 12-cv-0376-BTM-WMC, 2013 WL 2120825, at *7 (S.D. Cal. May 14, 2013) (class period purchase allegations were inadequate because the allegations did not state with particularity "*when* they bought Defendant's products," relying on *Yumul*); *Briseno v. Conagra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), 2011 WL 13128869, at *9–10 (C.D. Cal. Nov. 23, 2011) (same, relying on *Kearns* and *Yumul*); *Edmunson v. Procter & Gamble Co.*, No. 10-cv-2256-IEG (NLS), 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (same, relying on *Yumul*).

The Court must choose between the two sides of this split. In this endeavor, the best place to start is the most relevant circuit authority. In *Kearns*, the Ninth Circuit addressed whether the plaintiff's UCL claims met Rule 9(b)'s requirements. There, the plaintiff claimed that Ford had made "false and misleading statements concerning the safety and reliability of its [certified pre-owned] vehicles." 567 F.3d at 1123. The court held that the plaintiff's allegations were not particularized because they did not "specify what the television advertisements or other sales material specifically stated," "when he was exposed to them or which ones he found material," "which sales material he relied upon in making his decision to buy a [certified] vehicle," or "who made [a particular

misrepresentation] or when this statement was made." *Id.* at 1126. Because "[t]he pleading of these neutral facts fail[ed] to give Ford the opportunity to respond to the alleged misconduct," the court held that the complaint did not meet Rule 9(b)'s pleading standard. *Id.*

Based on this discussion in *Kearns*, the court in *Yumul* concluded that class period allegations were inadequate under Rule 9(b). It explained that "much as the plaintiff in *Kearns* failed to allege with specificity when certain fraudulent statements were made, Yumul has failed to allege when during the period from January 1, 2000 to the present she saw or heard the particular representations upon which her complaint is based." 733 F. Supp. 2d at 1124. In other words, the *Yumul* court concluded that because a complaint's failure to identify with particularity the source of certain misrepresentations is fatal under Rule 9(b), the failure to identify with particularity the time and place of interaction between the plaintiff and the misrepresentation must also be fatal.

*Yumul*'s extension of *Kearns*, however, goes a bit too far. The purposes of Rule 9(b)'s heightened pleading standard are threefold: (1) "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs"; (2) "to protect those whose reputation would be harmed as a result of being subject to fraud charges"; and (3) "to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125. In the context of this case, so long as a plaintiff identifies the label claim at issue, where the statement was made, why it was fraudulent, and how it affected the plaintiff, those three purposes stated above are served. And that is the case here. Based on Fernandez's complaint, it is clear which of Atkins's statements are at issue, and why. The complaint describes that Atkins asserted an amount of "net carbs" on the six specific products identified by Atkins, and that the net carbs claims violated California law because they were misleading as to the products' content of carbohydrates. In defending against these claims, Atkins knows what statements are at issue, why they are allegedly

misleading, and how it affected Fernandez. Requiring Fernandez to identify whether she purchased, for example, a Chocolate Coconut Bar on September 5, 2016, as opposed to a Chocolate Peanut Candy on September 10, 2016, serves no end towards ensuring that Atkins receives adequate notice and is protected from the burdens of baseless litigation.

In sum, the allegations in Fernandez's complaint satisfy the heightened pleading standard set forth in Rule 9(b).

### ii. Implied Warranty of Merchantability

Atkins contends that Fernandez fails to state a claim for a breach of the implied warranty of merchantability. Under California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). Fernandez argues that Atkins's net carbs claims violate the implied warranty of merchantability because the products do not conform "to the promises or affirmations of fact made on the container or label if any."[9] *Id.* § 2314(2)(f); *see Boswell v. Costco Wholesale Corp.*, No. 16-cv-0278, 2016 WL 3360701, at *33 (C.D. Cal. 2016).

Fernandez's claim fails, however, because her complaint identifies no "promise or affirmation" made on Atkins's labels that Atkins has failed to keep. Atkins's net carb claims are merely descriptions of the contents of the product. While Fernandez argues that Atkins should calculate net carbs in a different manner, as explained above, that theory cannot be the basis of any state law claim. Using only the theory that Atkins's net

---

[9] Fernandez's complaint states that Atkins's net carbs claims violate the implied warranty of merchantability because they "did not have even the most basic degree of fitness for ordinary use as a diet food." (ECF No. 1 at 25.) In responding to Atkins's argument that this claim should be dismissed because Atkins's products are fit for their purpose, however, Fernandez abandons that theory and argues *only* that Atkins violated the implied warranty of merchantability inasmuch as Atkins's products do not "conform to the promises or affirmations of fact made on the container or label." (*See* ECF No. 22 at 23–24 ("Defendant incorrectly assumes Plaintiff challenges Atkins's products fitness for internal purpose, when in reality Plaintiff brings her claim under a different meaning of merchantability.").) Fernandez has thus forfeited her theory that Atkins's products, in light of its net carbs claims, are not fit for their ordinary purpose.

carbs claims are misleading because they fail to also indicate its method of calculation, Fernandez allegations do not identify any *affirmation of fact* made on Atkins's labels to which the products do not conform. Fernandez's complaint points to scientific conclusions offered by researchers suggesting that sugar alcohols do impact blood sugar levels. But these studies do not render Atkins's net carbs claims affirmations of fact; at best, they show that Atkins's method of calculating net carbs might not be scientifically sound. Put another way, while Atkins's net carbs claims may mislead consumers about the content of carbohydrates in Atkins products, the claims are not verifiably false. In this sense, Fernandez's allegations are unlike a situation in which a manufacturer falsely states that its oil product is "100% Natural," *In re ConAgra Foods*, 908 F. Supp. 2d 1090, 1111–12 (C.D. Cal. 2012), or falsely states that its wipes are "flushable," City of Perry v. Procter & Gamble Co., 188 F. Supp. 3d 276, 289 (S.D.N.Y. 2016). In those cases, the manufacturer made an affirmation about the contents of the product, which the plaintiffs' allegations demonstrated to be false. If, for example, Atkins had stated on its labels that "net carbs" were calculated by deducting only dietary fiber from the total carbohydrate amount—and not deducting sugar alcohols—but in fact the net carbs claims on the labels deducted sugar alcohols, then Atkins's products would not conform to its affirmation regarding the net carbs in its products. But that is not the case here. In fact, as discussed above, the Court must infer that Atkins says *nothing* about its method of calculation. If that is the case, Atkins's net carbs claims are at most misleading, but not false.

By failing to point to a verifiable affirmation on Atkins's labels, Fernandez does not plausibly state a claim for a breach of the implied warranty of merchantability.

### iii. MMWA

Atkins contends that Fernandez's MMWA claims fail because Atkins's net carbs claims are not "warranties" for purposes of the MMWA. The MMWA provides a cause of action to a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Fernandez

3:17-cv-01628-GPC-WVG

pursues MMWA claims under theories of (1) written warranty and (2) implied warranty.

For purposes of the MMWA, a "written warranty" is:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specific level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier or a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

*Id.* § 2301(6). Atkins's net carbs claims do not fall within this definition. They are not a "promise . . . which relates to the nature of the material or workmanship" of the product, and Atkins does not "affirm[] or promise[] that such material or workmanship is defect free" or will meet a level of performance. Nor does the complaint identify any "undertaking in writing" between Fernandez and Atkins that Atkins would "refund, repair, replace, or take other remedial action" if Atkins's products do not meet a specified level of performance. Instead, Atkins's net carbs claims are simply "product descriptions." *See, e.g.*, *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 898 (C.D. Cal. 2013) ("The statement that Hansen's diet soda is 'premium' and contains 'all natural flavors' is not an assertion that the product is defect free or that it will meet a specific level of performance over a specified period of time. Nor is it a promise to take any remedial action. Rather, it is merely a description of the product."); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 965–66 (N.D. Cal. 2013) (food product labeling claims, including "'All Natural,' fresh, antioxidant, [and] sugar-free" were product descriptions, not promises under the MMWA); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1004 (N.D. Cal. 2012) (finding that the defendant's claim that certain smoothies were "all

natural" was not a written warranty under the MMWA because it was "a general product description rather than a promise that the product is defect free"); *Hairston v. South Beach Beverage Co., Inc.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012) (challenge to label statement that "vitamin-enhanced" flavored water was "all natural" and contained certain vitamins did not state a MMWA claim because the label claims were product descriptions, not written warranties). Fernandez offers no persuasive argument in response to this conclusion; she merely asserts that the MMWA covers food products. (*See* ECF No. 22 at 25.) Fernandez's written-warranty based MMWA claims therefore fails.

Fernandez's implied-warranty based MMWA claim similarly fails. The MMWA defines an implied warranty as "an implied warranty arising under State law (as modified by section 2308[10] and 2304(a)[11] of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). As explained above, Fernandez's complaint fails to state a claim for a breach of the implied warranty of merchantability under California law. As a result, Fernandez has not stated a plausible claim that Atkins has violated the MMWA by breaching an implied warranty of merchantability.[12]

### D. Standing to Pursue Injunctive Relief

Finally, Atkins contends that Fernandez lacks standing to request injunctive relief in this case because now that Fernandez knows how Atkins calculates its net carbs claims, she cannot be misled by them. Because Fernandez does not allege that she wishes to purchase Atkins's products anymore, Atkins argues, Fernandez fails to assert

---

[10] Section 2308, which deals with disclaimers or modifications to implied warranties, is inapplicable here.

[11] Section 2304(a), which sets certain standards "to meet the Federal minimum standards for warranty," is also inapplicable here.

[12] Because the Court agrees with Atkins that its net carbs claims do not constitute warranties under the MMWA, the Court need not address its alternative arguments that Fernandez's claims are "governed by Federal Law" or that Fernandez fails to allege that she provided Atkins with appropriate notice. (*See* ECF No. 9-1 at 18–19.)

an "actual and imminent" future injury that a plaintiff must show to obtain injunctive relief. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Fernandez responds that a recent Ninth Circuit decision, *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017), establishes that she has standing to obtain injunctive relief in this case.

In *Davidson*, the plaintiff challenged as false the defendant's label claims that its pre-moistened wipes were "flushable." *Id.* at 1107. After purchasing the wipes, the plaintiff discovered that they "were not truly flushable, so she stopped using" them. *Id.* at 1108. Nonetheless, the plaintiff alleged that she "continues to desire" to find flushable wipes, and would purchase the defendant's wipes if they were "truly flushable." *Id.* The complaint also asserted that the plaintiff "regularly visits stores that sell" the defendant's wipes, "but is unable to determine, based on the packaging, whether the wipes are truly flushable." *Id.* The district court concluded that the plaintiff lacked standing to seek injunctive relief because the plaintiff did not intend to purchase the same wipes in the future. *Id.* at 1112. The Ninth Circuit reversed, holding that the plaintiff could seek injunctive relief because "she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id.* at 1113. The court explained that a consumer might have standing in this scenario because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* at 1115. A consumer faces the threat of future harm with respect to false advertising because she is still "unable to rely on the product's advertising or labeling in the future."[13] *Id.* With respect to the allegations before it, the court held that the plaintiff had standing to seek injunctive relief because she still desired to purchase truly flushable wipes and so long as the defendant's "flushable" claims were false, she had no way of

---

[13] The court also observed—but stated that it was not basing its conclusion upon this observation—that precluding injunctive relief to all consumers facing false advertising would "effectively gut[]" California's consumer protection laws, which rely heavily on injunctive relief. *Id.* at 1115–16.

determining which wipes she should purchase.  *Id.* at 1116.

Fernandez's complaint does not allege a similar future injury.  According to the complaint, Fernandez now knows how Atkins goes about calculating its net carbs claims, and she will not be misled next time she goes to Wal-Mart or Target and looks at Atkins's labels.  Unlike in *Davidson*, where the plaintiff faced a future injury because she still could not rely on the defendant's claims about its products' "flushability," Fernandez admits that she now has knowledge that enables her to make an appropriate choice with respect to Atkins's products.  There is no longer any risk that Fernandez will be misled into purchasing Atkins's products based on their labels' net carbs claims.

Because her complaint does not allege an actual or imminent risk of future harm, Fernandez lacks standing to pursue injunctive relief in this case.

## IV.    Conclusion

In sum, the Court issues the following rulings.

- Federal law does not preempt Fernandez's state law claims to the extent that her claims are based on Atkins's failure to state on its labeling how it calculates net carbs.  Federal law does preempt Fernandez's attempt to utilize state law to prescribe a particular method of calculating net carbs.

- The Court declines to dismiss this case under the primary jurisdiction doctrine.

- Fernandez's UCL and FAL claims satisfy Rule 9(b)'s heightened pleading standard.

- The Court dismisses without prejudice Fernandez's claim of breach of the implied warranty of merchantability under California law because the allegations in the complaint do not identify any "promise or affirmation" to which Atkins's products did not conform.

- The Court dismisses without prejudice Fernandez's MMWA claims because she does not identify (1) any written warranty or (2) any breach of an implied warranty under California law.

- Fernandez lacks standing to pursue injunctive relief.

Fernandez may file an amended complaint addressing the deficiencies discussed above

28

no later than 21 days after the date of this order's issuance.

**IT IS SO ORDERED.**

Dated:  January 3, 2018

Hon. Gonzalo P. Curiel
United States District Judge