UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL FERNANDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ATKINS NUTRITIONALS, INC., and DOES 1-10,<br><br>Defendant. | Case No.: 3:17-cv-01628-GPC-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>**[ECF No. 31]** |

Before the Court is Defendant Atkins Nutritionals, Inc.'s ("Atkins") motion to dismiss aspects of Plaintiff Cheryl Fernandez's First Amended Complaint (the "FAC"). (ECF No. 31.) The motion is fully briefed. (*See* ECF No. 35 (Plaintiff's Response in Opposition); ECF No. 36 (Atkins's Reply).) For the reasons set forth below, the Court concludes that federal law preempts Plaintiffs' claims to the extent they challenge the statements on Atkins's labels that (1) set forth an amount of "net carbs," and (2) explain how Atkins calculates "net carbs." The Court also concludes that federal law does not preempt the statements on Atkins's labels that explain why Atkins has chosen its formula for calculating net carbs. As a result, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

## I. Background

In this putative class action, Fernandez claims that Atkins misleads purchasers of its snack products by including on its labels statements about the "net carbs" content of a particular product.

Dr. Robert Atkins formed Atkins "to promote the sale of books and food items related to the 'Atkins Diet,' a low to no carbohydrate diet." (FAC, ECF No. 30, at ¶ 13.) In 1999, Dr. Atkins published a book stating that "the most popular artificial sweeteners that American manufacturers use to replace conventional sugars," such as "sorbitol, mannitol, and other hexitols [i.e., sugar alcohols]" "were not approved for use in the Atkins Diet." (Id. ¶ 14.) In a book published in 2002, Dr. Atkins revised this statement by indicating that "certain sugar alcohols such as maltitol do not affect blood sugar and are acceptable" for the diet. (Id. ¶ 15.) Fernandez suggests that Dr. Atkins altered this conclusion to accommodate sales of Atkins's "growing line of food products that included sugar alcohols." (Id. ¶ 16.)

Atkins's website defines net carbs as "the total carbohydrate content of the food minus the fiber content and sugar alcohols." (Id. ¶ 17.) The website states that net carbs "reflects the grams of carbohydrate th[at] significantly impact your blood sugar level and therefore are the only carbs you need to count when you do Atkins"; that "the grams of carbohydrate in fiber, glycerine, and sugar alcohols don't break down and convert to blood sugar and need not be counted"; that net carbs "represents the number of grams of total carbohydrate minus those that do not impact blood sugar"; and that Atkins's net carb calculation is based on "science." (Id. ¶¶ 17–19.)

On the labels of its snack products, Atkins includes a calculation of the net carbs contained in that particular product. For example, the label on Atkins's "Chocolate Candies" states that it contains "1g Net Carb." (Id. ¶ 22.) For purposes of this ruling, the Court will refer to this statement in the format of "_g Net Carb" as a "net carbs claim." Atkins reaches this net carb amount by subtracting the grams of carbohydrates attributable to dietary fiber (4g in the Chocolate Candies) and sugar alcohols (14g) from

the total grams of carbohydrates (19g). (*Id.* ¶¶ 23–24.) Another statement on the back of the product label indicates how Atkins calculates the net carbs claim on the front of the label. In the Chocolate Candies example, the box states: "10g total carbs – 4g fiber – 14g sugar alcohols = 1g Atkins Net Carbs*." (*Id.* ¶ 26.) For purposes of this ruling, the Court will refer to this statement—the statement of how Atkins calculates net carbs claims—as the "formula statement." The asterisk next to "Carbs" leads a reader of the label to the following statement: "Counting Carbs? Atkins Net Carb Count assists you in tracking carbs that impact blood sugar. Fiber and sugar alcohols should be subtracted from the total carbs since they minimally impact blood sugar." (*Id.*) For purposes of this ruling, the Court will refer to this statement as the "explanation statement," as it explains why Atkins has chosen its formula for calculating net carbs.

Fernandez contends that these label statements are fraudulent, misleading, and omit material facts because (1) sugar alcohols, contrary to the statement on the label, do impact blood sugar; (2) the labels "conflict[] with the diet espoused by Dr. Atkins" in his 2002 book, in which Dr. Atkins stated that calculating net carbs should be calculated by subtracting *only* grams of fiber from the total grams of carbohydrates; and (3) Atkins's statements elsewhere that a product contains "only" a certain amount of net carbs creates a perception that the product is low in carbs. (*Id.* ¶¶ 28–29, 51, 52.)

As for her allegations that sugar alcohols *do* impact blood sugar levels, Fernandez asserts that "the authoritative scientific research on sugar alcohols" supports her position. (*Id.* ¶ 31.) The FAC refers to statements by the Diabetes Teaching Center at the University of California, San Francisco ("[D]on't be fooled – sugar alcohols are still a form of carbohydrate, and they still affect your blood sugar levels, if not as dramatically."); Dr. Regina Castro of the Mayo Clinic (sugar alcohols "can increase your blood sugar level"); and Dr. Thomas Wolever ("Some people may believe that products sweetened with sugar alcohols allow for more variety in food choices . . . . [but] there is no evidence that sugar alcohol-sweetened products have any benefit on long-term glycemic control in people with diabetes."; "Food labels of products containing sugar

3

alcohols can be confusing . . . . [I]ndividuals who use product labels to count carb[s] could potentially overestimate the amount of insulin to use for a carbohydrate load."; "It's a big misconception to say maltitol does not raise blood sugar."). (*Id.* ¶¶ 32–34, 47–48.) According to Dr. Wolever, 50 to 75 percent of maltitol—a sugar alcohol used by Atkins—is absorbed into the body. (*Id.* ¶ 38.) Because maltitol has an "energy value" only 25% less than an ordinary carbohydrate, the absorption rate indicated by Dr. Wolever means that the "total carbohydrate energy consumer per gram of maltitol is actually between 38 to 56 percent of the carbohydrate value of table sugar or ordinary carbohydrates." (*Id.* ¶¶ 37, 38.) Using this calculation, the net carbs value of the Chocolate Candies, according to Fernandez, would be between 6.32 and 8.84 grams, as opposed to the 1 gram indicated on the label. (*Id.* ¶ 40.) According to the Diabetes Teaching Center, net carbs should be calculated by subtracting half of the grams of sugar alcohol, rather than all grams of sugar alcohol. (*Id.* ¶ 41.)

While the Food and Drug Administration ("FDA") has not regulated or defined the phrase "net carb," it has indicated in its warning letters that it has been concerned that the term "may be misleading to consumers." (*Id.* ¶ 44.) In 2001, the FDA admonished a company for not including maltitol as a carbohydrate in its food label. (*Id.* ¶ 45.) Canada's FDA counterpart has found the term "net carbs" to be "not acceptable due to lack of scientific consensus on . . . definition and [its] potential to mislead consumers." (*Id.* ¶ 46.) In 2004, Atkins announced that it would no longer use the term net carbs on its food label because it considered the term imprecise. (*Id.* ¶ 49.) Atkins, however, reneged on that announcement; it continues to include net carbs claims on its labels. (*Id.* ¶ 50.)

The FAC asserts four causes of action: (1) violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 *et seq.*; (2) violation of the California False Advertising Law ("FAL"), California Business & Professions Code §§ 17500 *et seq.*; (3) breach of an express warranty in violation of California Commercial Code § 2313; and (4) breach of the implied warranty of

merchantability in violation of California Commercial Code § 2314.

## II. Legal Standard

A Rule 12(b)(6) motion attacks the complaint as containing insufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. Discussion

Atkins's motion is separated into two arguments: (1) Fernandez's state law claims are preempted to the extent that they attack the net carbs claims and the formula statements, and (2) Fernandez's state law claims are preempted to the extent that they attack the explanation statements. (*See* ECF No. 31-1 at 4–8.) As Fernandez notes in her opposition, nothing in Atkins's motion challenges the claims regarding Atkins's use of the word "only" on its labels (*i.e.*, "Only _g Net Carbs"). (*See* ECF No. 35 at 10 n.1.) As a result, the pending motion to dismiss does not seek dismissal of the entire complaint. For the reasons explained below, the Court agrees with Atkins that its net carbs claims and formula statements comply with federal regulations; as a result, federal law preempted Fernandez's state law claims challenging the net carbs claims and formula statements. The Court also concludes, however, that Atkins has failed to demonstrate that its explanation statements comply with federal regulations, and as a result Atkins has not shown that federal law preempted Fernandez's state law claims challenging Atkins's explanation statements.

Atkins's arguments rely heavily on the Court's ruling on Atkins's previous motion to dismiss. As a result, before addressing those arguments the Court first provides an overview of its previous ruling.

**A. The Court's Previous Ruling**

Fernandez filed her original complaint on August 11, 2017. (ECF No. 1.) The original complaint challenged only Atkins's net carbs claims on Atkins's products; it did not make any mention of the how or explanation statements discussed in the FAC. Atkins moved to dismiss the original complaint by arguing, in relevant part, that Fernandez's state law claims were preempted by federal law because the net carbs claims complied with federal regulations. (ECF No. 9.) Atkins asserted that net carbs claims are express "nutrient content claims" under 21 C.F.R. § 101.13, and that Fernandez was attempting to use state law to impose label requirements beyond what the FDA requires, a result prohibited by federal law.

The Court concluded that Atkins's statements are express nutrient content claims, but also that Fernandez alleged a plausible claim that the net carbs claims were potentially misleading in violation of 21 C.F.R. § 101.13(i)(3), which prohibits express nutrient content claims that are "false or misleading in any respect." (ECF No. 25 at 12–17.) The Court explained that because the complaint did not allege whether Atkins provided a formula statement, the Court must infer (in Fernandez's favor) that Atkins does not provide any explanation of how it calculates net carbs. (*Id.* at 15.) Because a failure to explain how Atkins calculates net carbs could mislead consumers about the carbohydrate content of Atkins products, the Court concluded, Atkins's labels could plausibly violate § 101.13(i)(3). (*Id.* at 16.) In response to the Court's ruling, Fernandez filed the FAC on January 31, 2018. As discussed above, the FAC now makes clear that Atkins *does* include on its product labels a statement on how it calculates net carbs. (FAC ¶ 26.)

//

//

## B. Challenges to Atkins's Net Carbs Claims and Formula Statements

In its previous ruling, the Court provided a comprehensive overview of the federal statutory and regulatory structure governing food labeling requirements. (*See* ECF No. 25 at 5–9.) Because Atkins asserts the same preemption theory as it did in its previous motion, the Court finds it helpful to reproduce its overview here:

> To evaluate Atkins's preemption argument, the Court must navigate the labyrinth of federal food labeling requirements. The statutory provisions discussed below were enacted as part of the Federal Food, Drug, and Cosmetic Act ("FDCA") and, later, the Nutrition Labeling and Education Act ("NLEA"), both of which govern labeling of food. Neither the FDCA nor the NLEA "permit private causes of action to enforce" their requirements and limitations, so "[a] plaintiff seeking remedies for mislabeled or misbranded products must do so through an appropriate state law vehicle." *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-cv-4213-MDH, [2017 WL 6420199, at *4] (W.D. Mo. Mar. 29, 2017).
>
> Three federal statutory provisions are relevant to Atkins's preemption argument: 21 U.S.C. §§ 343(q), 343(r), and 343-1. The Court begins with § 343(q), which governs the familiar "nutrition facts" box found on food labels across the country. In relevant part, § 343(q)(1)(D) states that a food label must indicate the food's amount of certain nutrients, including "[t]otal fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size or other unit of measure." Section 343(q)(2) empowers the Food and Drug Administration ("FDA") with the ability to add nutrients to (or remove nutrients from) § 343(q)(1)'s list.
>
> The FDA has promulgated comprehensive rules governing nutrition-box information, found at 21 C.F.R. § 101.9. Section 101.9(c) sets forth further requirements with respect to the nutrients that must be included in the nutrition-facts box. With respect to this case, the relevant requirements are found at § 101.9(c)(6), covering "'Carbohydrate, total' or 'Total carbohydrate.'" That provision requires that food labels include, *inter alia*, "[a] statement of the number of grams of total carbohydrate in a serving," *id.* § 101.9(c)(6), and "[a] statement of the number of grams of total dietary fiber in a serving," *id.* § 101.9(c)(6)(i). It also names several nutrients that can be declared "voluntarily," one of which is sugar alcohol. Section 101.9(c)(6)(iv) states: "[a] statement of the number of grams of sugar alcohols in a serving may be declared voluntarily on the label, except that when a claim is made on the label or in labeling about sugar alcohol or total

sugars, or added sugars when sugar alcohols are present in the food, sugar alcohol content shall be declared."

Next, 21 U.S.C. § 343(r) governs "nutrition levels and health-related claims." In essence, § 343(r) governs claims about the nutrient content of a food made outside of the nutrition-facts box.[1] In relevant part, § 343(r)(1) deems a food "misbranded"—and, as such, "prohibited," *id.* § 331(a)—if the label "characterizes the level of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food unless the claim is made in accordance with subparagraph (2)." *Id.* § 343(r)(1)(A). Put differently, if a food's label makes a characterization of its nutrient content, and that nutrient is "of the type" that is "required" to be included in the nutrition-facts box by § 343(q)(1) or (q)(2), § 343(r)(1) requires that characterization to comply with the requirements and limitations set forth in § 343(r)(2). The FDA refers to characterizations governed by § 343(r) as "nutrient content claims." *See* 21 C.F.R. § 101.13.

The FDA's regulations regarding nutrient content claims are found at 21 C.F.R. § 101.13. Section 101.13(i) sets forth the various kinds of nutrient content claims that may be made on a food label. The type relevant here is what the FDA refers to as an "express claim," governed by § 101.13(i)(3). That provision states that "the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and *it is not false or misleading in any respect*." *Id.* § 101.13(i)(3) (emphasis added).

Last, 21 U.S.C. § 343-1 contains the NLEA's preemption provision. In passing the NLEA, Congress stated that the law "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]." Pub. L. No. 101-535, §(6)(c)(1), 104 Stat. 2353, 2364. Section 403A is codified at 21 U.S.C. § 343-1, which states in relevant part that "no State or political subdivision

---

[1] As will be discussed in further detail below, § 343(r) applies to characterizations of nutrients "of the type" required by § 343(q), but does *not* apply to the information inside the nutrition-facts box. *See* 21 U.S.C. § 343(r)(1) ("A statement of the type required by paragraph (q) that appears as part of the nutrition information required or permitted by such paragraph is not a claim which is subject to this paragraph and a claim subject to clause (A) is not subject to clause (B)."). A nutrient content claim governed by § 343(r)(2) is thus any claim outside of the nutrition-facts box that the manufacturer has chosen to make about the same kind of nutrients discussed inside the class nutrition information box. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) ("[Section 343(r)] governs all *voluntary* statements about nutrient content or health information a manufacturer chooses to include on a food label or packaging.").

8

of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement[2] respecting any claim of the type described in [§ 343(r)(1)], made in the label or labeling of food that is not identical to the requirement of [§ 343(r)]." 21 U.S.C. § 343–1(a)(5). For purposes of § 343-1, "'not identical to' means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food that are not imposed by or contained in the applicable federal regulation." *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (internal quotation marks omitted). In other words, Fernandez's state law claims are not preempted so long as they "effectively parallel[] or mirror[] the relevant sections of the NLEA." *See Chacanaca*, 752 F. Supp. 2d at 1118.

A brief recap. Federal law preempts state law to the extent that state law imposes a requirement on nutrition content claims governed by § 343(r)(1) that are not identical to the requirements set forth in § 343(r) generally. Nutrient content claims are characterizations about a food's content of nutrients "of the type required by paragraph (q)(1) or (q)(2)." Finally, 21 C.F.R. § 101.13(i)(3) permits manufacturers to make express nutrient content claims so long as they are "not false or misleading in any respect." The combined force of Sections 343-1(a)(5), 343(q), and 343(r) establishes that Fernandez's state law claims escape preemption only if Atkins's net carbs claims either (1) are not nutrient content claims, or (2) are nutrient content claims, but violate Section 343(r) and/or related regulations. *See, e.g.*, *Chacanaca*, 752 F. Supp. 2d at 1119. The Court addresses these issues in turn.

(*Id.* at 5–9.) The Court went on to conclude that Atkins's net carbs claims are express nutrient content claims because they are statements about the amount of nutrients in a product, and those nutrients were "of the type required" to be discussed by 21 U.S.C. § 343(q)(1) and (q)(2). (*Id.* at 10–12.) Fernandez has not altered the complaint in a way that calls that conclusion into question. As a result, the Court again concludes that Atkins's net carbs claims are express nutrient content claims. Moreover, because the formula statements discuss the same the type of the same nutrients (total carbohydrates,

---

[2] "Requirement" in this context applies not only to positive state law, but also "common-law duties and judge-made rules." *Chacanaca*, 752 F. Supp. 2d at 1118 (citing *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 443 (2005)).

9

fiber, and sugar alcohols) in Atkins's products, the formula statements also are express nutrient content claims.

Having concluded that Atkins's net carbs claims and formula statements are express nutrient content claims, the Court must determine whether, under the new allegations in the FAC, the net carbs claims and the formula statements comply with 21 U.S.C. § 343(r) and/or its related regulations. As explained above, if Atkins's net carbs claims and formula statements comply with the applicable federal statutory and regulatory scheme, federal law preempts Fernandez's state law claims challenging these statements. If the statements violate the federal scheme, however, Fernandez may pursue state law claims to the extent that those claims align with the violation of federal law.

As also explained above, the applicable governing regulation is § 101.13(i)(3), which permits express nutrient content claims to the extent that they are not "false or misleading in any respect." Based on the new allegations in the FAC, it is clear that Atkins's net carbs claims and formula statements are not false or misleading in any respect. As the FAC states, the label clearly indicates that Atkins calculates "net carbs" by subtracting the amount of carbohydrates from fiber and sugar alcohols from the total amount of carbohydrates. (*See* FAC ¶ 26.) A consumer reading that formula, and the execution of that formula, would understand precisely what Atkins means by stating, for example, that the Chocolate Candies contain "1g Net Carb." As a result, Atkins is correct that its net carbs claims and formula statements comply with § 101.13(i)(3). Fernandez does not offer any other argument explaining why the net carbs claims and formula statements violate the federal scheme. As a result, the Court concludes that federal law preempts Fernandez's state law claims challenging Atkins's net carbs claims and formula statements.[3]

---

[3] In reaching this conclusion, the Court does not consider whether the FDA's statements in its warning letters validate the legality of Atkins's net carbs claims and formula statements. In finding that such statements compied with the federal scheme, the court in *Johnson* relied on such FDA warning letters, explaining that "[t]he FDA permits net carbohydrate nutrient content claims so long as the statement is

## C. Explanation Statements

Atkins also argues that its explanation statements comply with the federal scheme, and as a result, Fernandez's state law claims focused on that aspect of Atkins's label is preempted. As noted, Atkins's explanation statements read: "Counting Carbs? Atkins Net Carbs Count assist you in tracking carbs that impact blood sugar. Fiber and sugar alcohols should be subtracted from the total carbs since they minimally impact blood sugar." (FAC ¶ 26.) Fernandez contends that this statement is false and misleading because there is scientific uncertainty as to whether or not sugar alcohols significantly impact blood sugar.

Before addressing Atkins's arguments to the contrary, the Court notes that unlike the net carbs claims and the formula statements, Atkins's explanation statements are *not* nutrient content claims because they do not discuss the content of any nutrient. As the court in *Johnson*, explained, the explanation statement "is neither a quantitative statement indicating the net carbohydrate content of the product, nor does it seek to imply the net carbohydrate content of the product." 2017 WL 6420199, at *8. Rather, the explanation statements make a scientific claim about the health effects of a particular nutrient, that is, sugar alcohol. As a result, the federal preemption provision upon which Atkins relies to make its preemption argument, 21 U.S.C. § 343-1(a)(5), does not apply. That provision operates to preempt any state law requirement regarding *nutrient content claims* "not identical to the [federal] requirements" regarding nutrient content claims. Because the explanation statements are not nutrient content claims, § 343-1(a)(5) does not apply to Atkins's statement about why it chose this formula. *See Johnson*, 2017 WL 6420199, at *8 ("This statement does not fall within Section 343(r) or its associated regulations.

---

quantitatively true and the method of calculation is disclosed." 2017 WL 6420199, at *7. This Court is not so sure that a federal agency's statement, made only in warning letter, carries dispositive legal authority in this context. The parties do not offer any argument regarding what weight the Court should give the FDA's statements in making this legal determination. As a result, and because doing so would be unnecessary, the Court declines to address that issue.

11

3:17-cv-01628-GPC-WVG

Instead, it is outside of the scope of the NLEA's preemptive reach, which the Court must strictly and narrowly construe."). Atkins does not suggest that any other federal provision expressly preempts state law with respect to its explanation statements. For that reason alone, Atkins's preemption argument as to its explanation statements fails. Pub. L. No. 101-535, §(6)(c)(1), 104 Stat. 2353, 2364 (the federal scheme "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the [FDCA]").

But even if the explanation statements could be considered an express nutrient content claim as Atkins asserts, it does not comply with § 101.13(i)(3) because, taking Fernandez's allegation that sugar alcohols *do* impact blood sugar as true, the explanation statements—which assert that sugar alcohols do not impact blood sugar—are false. Atkins does not contest this assertion; rather, it argues only that the FDA permits such statements so long as the label "adequately explains how the terms are used so that it would not be false or misleading to consumers." (ECF No. 31 at 6 (quoting ECF No. 9-9 (letter from Acting FDA Commissioner to the President of the National Consumers League, dated Nov. 19, 2004[4])).) In other words, Atkins seems to contend that so long as it includes a formula statement, it can also include an explanation statement. Atkins cites a 2005 FDA letter sent to Unilever stating that that "firms are not prohibited from declaring other quantitative information outside of the nutrition label provided the additional information is not false or misleading," and that it was not "generally objecting to additional quantitative 'net' carbohydrate-type statements that are truthful and not misleading; for example, where the 'net' terms are sufficiently explained on the label so that the consumer understands the meaning of the use of such terms." (ECF No. 9-10,

---

[4] The Court takes judicial notice of official FDA guidance documents. *See, e.g.*, *Wilson v. Frito-Lay N.A., Inc.*, No. 12-cv-1586-JST, 2017 WL 4023152, at *2 (N.D. Cal. May 26, 2017) ("Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website.").

12

Ex. H at 094.[5]) Atkins also cites an FDA letter sent to a food manufacturer stating that its labels were potentially misleading because the manufacturer included on its label a net carbs claim but failed to "adequately describe how the number of 'net carbs' is derived"; the FDA further instructed that any such explanation must be "truthful and not misleading." (ECF No. 9-14, Ex. K at 473–74.) Last, Atkins cites a similar FDA letter to a different manufacturer stating that the amount of net carbs stated on the product label did not comport with the manufacturer's formula for calculating net carbs, and also that the "FDA has not defined the term 'net carbs' and we have concerns that this term may be misleading consumers." (ECF No. 9-15, Ex. L at 478.)

According to Atkins, these letters "clearly" demonstrate that the FDA has determined that Atkins's explanation of its formula for calculating net carbs is truthful and not misleading. (ECF No. 31 at 7.) The Court cannot agree. These letters do not speak to the issue of whether Atkins's assertion that sugar alcohols do not impact blood sugar levels is true and not misleading. Rather, the letters upon which Atkins relies show, at best, the FDA insists that manufacturers provides formula statements in *quantitative* form. Atkins's explanation statements are qualitative, not quantitative. None of the letters cited by Atkins indicate in any manner that the FDA believes that the statement "sugar alcohols . . . minimally impact blood sugar" is neither false nor misleading. As the *Johnson* court explained in rejecting the exact same argument:

> The FDA requires Defendant to disclose the method used to calculate the net carbohydrate nutrient content claim. Had Defendant done that, and nothing more, it would be safely within the perimeter of Section 343-1(a)(5)'s preemptive effect. However, Defendant overextended itself when it stated that sugar alcohols "should be subtracted from the total carbs *since they minimally impact blood sugar*."

2017 WL 6420199, at *8 (emphasis in original). Because Fernandez plausibly alleges, by citing scientific reports, that sugar alcohols indeed do impact blood sugar, and the Court

---

[5] The citation pagination for the exhibits to Atkins's earlier motion to dismiss (ECF No. 9) refers to the Bates Stamp located at the bottom right corner of each page.

must assume that fact to be true at this stage in the litigation, Fernandez has stated a plausible claim that Atkins's explanation statements are false or misleading in violation of the FDA's regulations.

The only other argument Atkins offers on this issue is to point out that the FDA has not issued a regulation governing label statements explaining a manufacturer's method of calculating net carbs. (ECF No. 31 at 8.) Quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015), Atkins asserts that the FDA's failure to issue a relevant regulation is "tantamount to a conscious decision by the agency to permit" the conduct as issue. Once again, Atkins has taken that quotation out of context. The selected passage comes from the *Astiana* court's description of the defendant's argument, which the court *rejected*. The panel wrote:

> Hain finally points out that the FDA has never issued regulations regarding the use of "natural" on cosmetics labels. That is true, but Hain then argues that the FDA's failure to issue specific regulations on the subject is tantamount to a conscious decision by the agency to permit any use of this term a manufacturer sees fit. This argument proves too much. By this logic, a manufacturer could make any claim—wild, untruthful, or otherwise—about a product whose contents are not addressed by a specific regulation. The statute, however, proscribes statements that are "false or misleading in any particular," not statements that are "prohibited by specific FDA regulations."

*Id.* (emphasis added). This is the second time Atkins has misused this passage. In its previous ruling, the Court rejected Atkins's use of this identical quotation. (ECF No. 25 at 13.) An observer of Atkins's briefing in this case could reasonably conclude that Atkins has deliberately attempted to mislead the Court about the contents of Ninth Circuit case law.

Atkins offers no other substantive argument in support of its motion. As a result, Atkins offers no persuasive reason to conclude that federal law preempts Fernandez's state law claims challenging Atkins's explanation statements.

## IV. Conclusion

In sum, the Court agrees with Atkins that federal law preempts Fernandez's state

14

law claims to the extent that Fernandez challenges Atkins's label statements in the form of "_g Net Carbs" and the accompanying explanations of the formula that produces that amount. Atkins fails, however, to offer any persuasive argument that federal law preempts Fernandez's claims to the extent she challenges Atkins's statement on its labels explaining why it has chosen that formula. Atkins's motion to dismiss is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: May 9, 2018

Hon. Gonzalo P. Curiel
United States District Judge